Merrimack
No. 89-203

ROBERT BUSSIERE

v.

MICHAEL J. CUNNINGHAM, WARDEN, & a.

March 9, 1990

*W. Kirk Abbott, Jr.*, assistant appellate defender, of Concord, by brief and orally, for the plaintiff.

*John P. Arnold*, attorney general (*David S. Peck*, assistant attorney general, on the brief and orally), for the defendants.

JOHNSON, J. The New Hampshire Adult Parole Board denied plaintiff's request for parole from the State Prison. Plaintiff petitioned the superior court for a writ of habeas corpus to review the denial, but the Court (*Dunn*, J.) dismissed his petition and denied his subsequent motion for reconsideration. For the reasons stated below, we affirm.

As a result of a negotiated plea, plaintiff was sentenced by the Superior Court (*Bean*, J.) on April 3, 1980, to four consecutive terms of imprisonment. The last term, a sentence of one-and-one-half to six years, was imposed for the crime of attempted first degree murder. RSA 629:1, 630:1-a. Plaintiff was paroled from each of the first three sentences in turn, so that on June 6, 1987, he was paroled from his third sentence and began serving his fourth.

While serving his last sentence and awaiting his minimum release date, plaintiff received no disciplinary reports and completed three drug and alcohol abuse programs. He requested parole from the fourth sentence, but was denied on March 25, 1988, following a hearing. The New Hampshire Adult Parole Board (the Board) gave the following reasons for the denial: "There is not, at this time, a reasonable probability that Mr. Bussiere will conduct himself as a good citizen while on parole. ... [P]arole at this time

would diminish the seriousness of the crime for which Mr. Bussiere was convicted ... [and] is not in the best interest of society."

Plaintiff filed a petition for writ of habeas corpus on November 8, 1988, after the deadline for bringing an appeal of the Board's decision by writ of certiorari had already passed and after the taped recording of the parole hearing had been destroyed. A hearing on plaintiff's petition was held before the Superior Court (*Dunn,* J.) on February 22, 1989, and the following day the court ordered the Board to "articulate the basis for [the] conclusions" it reached in denying plaintiff's request for parole. In response to this order, the Board gave the court the following clarification:

> "Robert Bussiere was convicted of Attempted 1st Degree Murder. The Board took into consideration testimony of family members of the victim, Chief of Police of Manchester, and the Hillsborough County Attorney, who was involved in this case when it was disposed of in 1980. Strong consideration was given to the fact that Atty. Peter McDonough has appeared personally or provided a written statement at all prior parole hearings involving Robert Bussiere and at each hearing argued that justice was not served by the final disposition made for the crime committed, and he objected to parole each time. Atty. McDonough clearly stated that the victim had no input into the plea bargaining that was made and that he himself personally objected to the agreement.
>
> In addition to a petition circulated among the public which was signed by more than 5,000 citizens, the Parole Board received more than 20 personal letters from citizens clearly stating that they objected to the parole of Mr. Bussiere at this time. Many of these letters expressed great sympathy with the victim, who was not given the opportunity to be heard when Robert Bussiere was sentenced.
>
> The Parole Board believes that the victims of crimes and the public have the right to be heard and in this case there is a public outcry that release of Mr. Bussiere at this time would be against public interest.
>
> In reaching this decision, the Parole Board considered progress that Robert Bussiere had made as an inmate, but this was overshadowed by the rights of the victim and the desire of the public to see justice done."

The Board wrote this clarification almost a year after the parole hearing took place, and without the benefit of a verbatim transcript or recording of the hearing. On April 3, 1989, the superior court dismissed plaintiff's petition for writ of habeas corpus, and it subsequently denied plaintiff's motion for reconsideration.

On appeal, plaintiff argues first that the State's parole release regulatory scheme grants him a "level two" protected liberty interest in obtaining parole. Plaintiff further argues that the Board unlawfully infringed upon this liberty interest, and thus violated his due process rights, by denying parole without making proper findings. Second, plaintiff argues that the Board committed legal error, and thus "unlawfully infringed upon [plaintiff's] enforceable level three liberty interest[,] by denying parole for reasons that were not set forth in the regulatory scheme." From a liberal reading of plaintiff's brief, it appears that plaintiff also argues that the Board committed legal error in denying parole for reasons that, although set forth in the regulatory scheme, were nonetheless improper.

In *Bonser v. Courtney*, 124 N.H. 796, 807–08, 481 A.2d 524, 530 (1984), we described the nature of a petition for writ of habeas corpus:

> "We have long held that the standard of review in habeas corpus proceedings is whether the court pronouncing sentence acted beyond the scope of its jurisdiction. If the trial court did not have jurisdiction over the subject matter of the underlying action and over the defendant, the person imprisoned and seeking the writ will be discharged from commitment. However, if the trial court had jurisdiction, '"its judgment is final and conclusive, and must stand until revised by appeal ... or other proceeding ... and can not be examined and revised collaterally by the writ of *habeas corpus*."'
>
> However, this court has held that the jurisdiction of a court can be 'lost' when constitutional rights of the plaintiff have been violated in the underlying proceeding which resulted in the commitment. Thus, a plaintiff by way of a petition for a writ of habeas corpus may collaterally attack that proceeding, after the time for direct appeal has expired, if harmful constitutional error can be established."

(Citations omitted.)

 "The procedural prerequisite for a court's consideration of a petition for a writ of habeas corpus is an allegation of a present deprivation of a protected liberty interest." *Woodman v. Perrin,* 124 N.H. 545, 548, 474 A.2d 999, 1001 (1984) (citation omitted). In *Baker v. Cunningham,* 128 N.H. 374, 513 A.2d 956 (1986), this court explained the analysis we must use to review the dismissal of an inmate's petition for writ of habeas corpus. There are "three categories of [protected liberty] interests, the denial or infringement of which may be claimed by a criminal defendant as the basis for relief under a court's jurisdiction to issue writs of habeas corpus." *Id.* at 378, 513 A.2d at 958.

"Level one" interests are "inherent or constitutional rights to be free." *Baker, supra* at 378, 513 A.2d at 959 (citation omitted). If plaintiff alleged an interference with a level one interest, he would be arguing that the State and Federal Constitutions guarantee a "right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7 (1978). Recognizing that neither constitution confers upon him such a right, plaintiff does not allege a level one interference. *See Greenholtz,* 442 U.S. at 7; *Baker, supra* at 380, 513 A.2d at 960.

"Level two" liberty interests are those created by State or federal law. By enacting statutes and authorizing regulations, a jurisdiction can grant:

> "rights or expectations to preserve or obtain liberty, or to limit the government's discretion to infringe it .... The hallmarks of these second-level rights or expectations are not only the relative seriousness of their loss, but also their sources in 'particularized standards or criteria [guiding governmental] decision makers.' Such standards must amount to 'substantive [legal] limitations on official discretion.' Only when a second-level liberty interest is so derived can a claim to it be said to rise above the level of a hope, which depends upon an essentially discretionary judgment, to the level of a right, which may be claimed upon proof of a set of facts relevant to satisfy a substantive standard.

> Such rights or expectations created by substantive law, like the constitutional or inherent rights in the first category of liberty interests, are subject to procedural due process protection."

*Baker, supra* at 378–79, 513 A.2d at 959 (citations omitted).

■ In *Baker*, we held that this State's parole release statute does not provide prisoners with a level two liberty interest in obtaining parole. 128 N.H. at 381, 513 A.2d at 960. Since that holding, the substance of RSA 651-A:6, the parole release statute, has not changed, but the adult parole board has promulgated rules pursuant to RSA 651-A:4, III. Plaintiff argues that the addition of the adult parole board rules (rules) to the statutory scheme created a level two liberty interest in obtaining parole where the statute, standing alone, did not. We disagree.

Before examining the parole release regulatory scheme, it is helpful to review the reasoning *Baker* followed to find no *statutory* level two liberty interest in parole release:

> "RSA 651-A:6, :7 (Supp. 1983) conditions parole on a judgment that a prisoner will obey the law and observe the terms of parole if he is released. These conditions call for predictive judgments; there is no particular fact that would, if proven, entitle a prisoner to the benefit of such a judgment, and consequently there is no statutory basis to claim an entitlement to parole.... While the decision to revoke [parole] is characteristically circumscribed by the burden on the government to prove facts amounting to a violation of parole conditions, the decision to deny is discretionary."

*Baker*, 128 N.H. at 381, 513 A.2d at 960 (citations omitted).

■ A fair reading of the Board's rules persuades us that the parole release regulatory scheme does not in any way limit the statutory discretion of the Board to grant or deny parole. The pertinent part of paragraph I of the statute, RSA 651-A:6, Terms of Release, reads: "A prisoner *may* be released on parole ... provided that there shall *appear to the adult parole board* ... to be a *reasonable probability* that he will remain at liberty without violating the law and will conduct himself as a good citizen." (Emphasis added.) Turning to the rules, Par 301.01, in PART Par 301, "Criteria," states:

> "Par 301.01 *Necessary Condition.* An inmate shall not be granted parole unless the Board finds a reasonable probability that the inmate will remain at liberty without violating the law and will conduct himself as a good citizen. RSA 651-A:6, I. While that finding is a *necessary* condition to the granting of parole, it is not a *sufficient* condition, i.e.

the Board may make that finding and yet deny parole on some other ground as provided in Par 302."

The first sentence of Par 301.01 is obviously a rephrasal of RSA 651-A:6, I. The "shall not ... unless" language simply means that the "necessary condition" must be met before the prisoner can be released. It does *not* mean that release is required once that necessary condition is met. Par 301.01 makes this distinction clear. *See Patten v. North Dakota Parole Board,* 783 F.2d 140, 142 (8th Cir. 1986) (North Dakota statute, "no parole shall be granted . . . unless"); *Huggins v. Isenbarger,* 798 F.2d 203, 205–06 (7th Cir. 1986) (Indiana statute, "may not ... if"); *Thomas v. Sellers,* 691 F.2d 487, 488–89 (11th Cir. 1982) (Alabama statute, "no prisoner shall be released ... but only if"); *Staton v. Wainwright,* 665 F.2d 686, 687–88 (5th Cir. 1982) (Florida statute, "no person shall be placed on parole ... unless"). *But see United States ex rel. Scott v. Illinois Parole and Pardon Board,* 669 F.2d 1185, 1188-89 (7th Cir. 1982) (Illinois statute, "shall not ... if"). *See also Board of Pardons v. Allen,* 482 U.S. 369, 378 n.10 (1987).

Par 302.01, in Part Par 302, "Denial of Parole," reads:

"Par 302.01 *Reasons for Denial.* Based upon a review of the above criteria [listed in Par 301.01 and 301.02] in the judgment of the Board:

(a) There exists reasonable probability that the individual will not conform to the conditions of parole and/or the laws of the State of New Hampshire.

(b) Release on parole at that time would diminish the seriousness of the crime, or encourage disrespect for the law, or lessen the deterrent effects of the law.

(c) Release at this time and/or under the present circumstances could have an adverse effect on institutional discipline.

(d) Continued treatment, mental or psychological care, or vocational or other training within the institution would substantially improve the prisoner's capacity to lead a law-abiding life upon release at a future date.

(e) Such other reasons as the Board deems pertinent to the case under consideration."

In Par 102.03 "Purpose of the Rules," the Board states: "Parole shall be considered a privilege, something to be earned rather than automatically given...."; and Par 201.01 "The Nature of Parole" reads: "Parole is a privilege, not a right. Parole shall be granted

a prisoner only when it is in the best interest of both society and the individual prisoner."

■ We fail to understand how these quoted words could be construed to grant plaintiff a protected liberty interest in obtaining parole. It is difficult to imagine a clearer description of the Board's broad discretion. Because plaintiff has no level two liberty interest, his parole denial was not subject to procedural due process protections. *Baker*, 128 N.H. at 381, 513 A.2d at 960. We therefore cannot review plaintiff's parole denial for due process violations.

We return to *Baker* for an explanation of level three liberty interests:

> "The third level of liberty interests, cognizable in habeas proceedings in the courts of this State, are legal rights that have a bearing on official decisions to grant or to withhold liberty, and which are directly enforceable under State law. An individual thus has a cognizable interest in the legality ... of the State's action affecting his liberty."

*Baker*, 128 N.H. at 379, 513 A.2d at 959 (citations omitted). In other words, plaintiff can show an interference with a level three liberty interest, and thus win relief under his petition for writ of habeas corpus, if he can show that the Board committed certain legal errors that affected his liberty. *Id.* at 381, 513 A.2d at 961.

■ First, plaintiff alleges legal error in the Board's finding that "[t]here is not, at this time, a reasonable probability that Mr. Bussiere will conduct himself as a good citizen while on parole. ..." Plaintiff acknowledges that the Board's finding must stand if it is supported by a "modicum of evidence." *See Superintendent v. Hill*, 472 U.S. 445, 455 (1985). This standard protects plaintiff from arbitrary and capricious decisions. In alleging legal error, plaintiff argues that the Board failed to meet even this modest standard. However, we have no way of judging whether the finding was supported by a modicum of evidence because no transcript of the parole hearing exists. The Board's clarification, written at the request of the superior court almost a year after the hearing, is not a substitute for the transcript. "Absent a transcript, the issue of sufficiency of the evidence to support the [finding] cannot be raised and ... we will presume that the evidence supports the [finding]." *Paine v. Paine*, 119 N.H. 874, 876–77, 409 A.2d 790, 791–92 (1979).

Because this finding of the Board stands, much of the remainder of plaintiff's argument crumbles. The rules provide that a prisoner *cannot* be paroled if the Board finds there is not a "reasonable probability that the inmate will remain at liberty without violating

the law and will conduct himself as a good citizen." The Board is therefore not required to provide any further justification for a parole denial once it has made this finding. The Board in this case did provide additional reasons for the parole denial, but our review of those reasons is necessarily limited. Plaintiff cannot obtain relief under his petition unless the Board's additional reasons were plainly arbitrary or violated the State or Federal Constitutions. *See Martel v. Hancock*, 115 N.H. 237, 238–39, 339 A.2d 9, 11 (1975); *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 467 (1981) (Brennan, J., concurring).

Plaintiff argues that the Board should not have taken into account adverse publicity or placed so much weight on the victim's desires. Moreover, plaintiff asserts the Board had no basis for finding that parole would not be in society's best interest. We find no constitutional violation or arbitrariness in these findings and therefore dismiss plaintiff's arguments concerning them.

■ The attorney general is the chief law enforcement officer for the State. It must be presumed that he agreed to the negotiated plea and sentence in this case. The county attorney is subject to the authority of the attorney general. *Wyman v. Danais*, 101 N.H. 487, 147 A.2d 116 (1958). The prosecutorial voice of the State must be singular; hence it is improper for the county attorney, in his official capacity, to appear before the parole board to criticize the plea bargain and sentencing recommendation approved by the attorney general and to offer his own contrary opinion at this time as to what should have been the agreed-upon sentence recommendation. However, since the county attorney's views cannot be found to have been the conclusive reason why the Board denied parole, we will not reverse the Board's decision despite the county attorney's improper conduct.

■ Last, plaintiff argues that the Board impermissibly invaded the judiciary's sentencing function by finding that parole would "diminish the seriousness of the crime." This argument presents a colorable claim that the Board's finding violates the State Constitution, and it therefore merits attention, although it ultimately fails. While sentencing is an exclusively judicial function, this parole decision did not rest entirely on the Board's views as to proper sentencing.

*Affirmed.*

All concurred.