Merrimack
No. 94-661

## WILLIAM KNOWLES

### v.

## WARDEN, NEW HAMPSHIRE STATE PRISON

October 31, 1995

*Tower, Bean & Crocker, P.A.*, of Jaffrey (*Jefferson K. Allen* on the brief and orally), and *Law Office of Joshua L. Gordon*, of Concord (*Joshua L. Gordon* on the brief), for the plaintiff.

*Jeffrey R. Howard*, attorney general (*Christopher P. Reid*, and *John C. Kissinger, Jr.* assistant attorneys general, on the brief, and *Mr. Reid* orally), for the defendant.

BROCK, C.J. The plaintiff, William Knowles, appeals the Superior Court (*Manias*, J.) denial of his petition for writ of habeas corpus. The plaintiff argues that his State and federal constitutional rights against compelled self-incrimination are violated by a New Hampshire Adult Parole Board (parole board) requirement that he complete a sexual offender program before becoming eligible for parole. We affirm.

In 1987, after a jury trial in Superior Court (*Flynn*, J.), the plaintiff was convicted of two counts of aggravated felonious sexual assault. He was sentenced to two consecutive terms in prison, the first being from seven to fifteen years, and the second from three to fifteen years. We upheld his convictions on direct appeal in *State v. Knowles*, 131 N.H. 274, 553 A.2d 274 (1988).

In 1993, the plaintiff sought but was denied parole from the first to the second sentence. The parole board denied his request for parole because the plaintiff had not completed the prison's sexual offender program (SOP). The parole board informed the plaintiff that he should not seek parole again until he had completed the program. The plaintiff's 1994 request for an additional parole board hearing was denied because of his failure to complete the SOP. The plaintiff subsequently sought admission into the SOP but was denied because he refused to admit responsibility for the crimes of which he had been convicted.

An inmate may request admission to the SOP, or he may be referred by the court system, mental health counselors, or case managers. The program's objectives include development of open and honest communication, development of awareness of contributing factors to the offense committed, self-disclosure of the inmate's entire sexual offending history, development of victim empathy, development of higher self-esteem and healthier relationships, reduction of deviant arousal patterns, and development of a realistic relapse prevention plan. In order to be admitted into the program, inmates must satisfy strict admission criteria, which include a history of deviant sexual behavior, including child molesting or incest, a willingness to commit to one year of treatment, the recognition of a "serious problem," and the ability to adjust to a "therapeutic community environment." The criterion that raises the plaintiff's current objection is that an applicant to the program must "[a]dmit[] offending . . . consistent with victim reports."

In his petition for writ of habeas corpus, the plaintiff claimed that predicating consideration for parole on his participation in a program which requires him to admit guilt of the crimes of which he was convicted violates his State and federal constitutional rights

against compelled self-incrimination. The superior court denied the petition, concluding that the plaintiff has not been "compelled" to incriminate himself when he may choose not to participate in the SOP, and that the plaintiff has no constitutional liberty interest in parole. We agree.

■ Before we will consider a petition for a writ of habeas corpus, the plaintiff must assert that his present imprisonment is unlawful, alleging "a present deprivation of a protected liberty interest." *Woodman v. Perrin*, 124 N.H. 545, 548, 474 A.2d 999, 1001 (1984). Our analysis of liberty interests begins with part I, article 15 of the New Hampshire Constitution and with the fourteenth amendment to the United States Constitution. *See Baker v. Cunningham*, 128 N.H. 374, 380, 513 A.2d 956, 960 (1986). We analyze his claim first under the State Constitution. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983). Because part I, article 15 is at least as protective of individual liberties as the fourteenth amendment, we need not conduct a separate due process analysis under the Federal Constitution. *See In re Tracy M.*, 137 N.H. 119, 122, 624 A.2d 963, 965 (1993); *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979).

> An individual has a liberty interest, in the broadest sense, in the application of any rule affirmatively recognizing a claim of liberty or in limiting the exercise of a governmental power over the person. Not every such liberty interest lends itself to judicial enforcement or vindication, however, and courts have derived three categories of such interests, the denial or infringement of which may be claimed by a criminal defendant as the basis for relief under a court's jurisdiction to issue writs of habeas corpus. Interests in the first two categories are either constitutional in origin or constitutionally protected; those in the third category are directly enforceable, at least in the courts of New Hampshire, as legal rights.

*Baker*, 128 N.H. at 378, 513 A.2d at 958. The plaintiff has no right to parole, unless he presents "some provision grounded in State law mandating [his] release upon proof of certain ascertainable facts." *Id.* at 380, 513 A.2d at 960; *see Jago v. Van Curen*, 454 U.S. 14, 20-21 (1981) (parole statutes found not to create a protected liberty interest for due process purposes).

The plaintiff has alleged interference with a "third level" liberty interest, *i.e.*, a legal right which has "a bearing on official decisions to grant or to withhold liberty, and which [is] directly enforceable under State law." *Baker*, 128 N.H. at 379, 513 A.2d at 959. He

accordingly "has a cognizable interest in the legality, as well as in the constitutionally required procedural sufficiency, of the State's action affecting his liberty." *Id.* To obtain relief under this petition, the plaintiff must show that the parole board committed certain legal errors that affected his liberty. *Bussiere v. Cunningham, Warden,* 132 N.H. 747, 754, 571 A.2d 908, 912 (1990). The legal errors shown must have been plainly arbitrary, violative of the State or Federal Constitutions, or "void for lack of the requisite statutory process." *Martel v. Hancock,* 115 N.H. 237, 239, 339 A.2d 9, 11 (1975); *see Bussiere,* 132 N.H. at 755, 571 A.2d at 913.

The New Hampshire General Court recites the purpose of our parole system in this way:

> It is the intent of the legislature that the state parole system provide a means of supervising and rehabilitating offenders without continued incarceration and a means by which prisoners can be aided in the transition from prison to society. It is also the intent of the legislature that the policies, procedures and actions of the . . . parole board and the department of corrections relative to the administration of this system emphasize the need to protect the public from criminal acts by parolees.

RSA 651-A:1 (Supp. 1994). Toward these ends, the legislature has granted broad authority to the parole board to enact rules regarding the conduct of parole hearings, the criteria used to evaluate prisoners who seek parole, conditions for parolee conduct, and the procedures for parole revocation. RSA 651-A:4 (1986). Most importantly, in the provision describing the "terms" of a prisoner's release on parole, the legislature states the minimum requirement — completion of the minimum term of the inmate's sentence — and then requires "that there shall appear to the . . . parole board . . . to be a reasonable probability that [the inmate] will remain at liberty without violating the law and will conduct himself as a good citizen." RSA 651-A:6, I (1986).

■ ■ Pursuant to RSA 651-A:4, III, the parole board has enacted comprehensive rules governing the parole process. Reflecting the intent of the legislature as enunciated in RSA 651-A:1, the board describes the dual goals of parole thus: "Parole is a privilege, not a right. Parole shall be granted an inmate only when it is in the best interest of both society and the individual inmate." N.H. ADMIN. RULES, Par 201.01. We have held that the parole board's broad discretion to deny parole is not limited by RSA chapter 651-A, or by its administrative rules. *See Bussiere,* 132 N.H. at 752, 571

A.2d at 911; *Baker*, 128 N.H. at 381, 513 A.2d at 960. Neither set of provisions "mandat[es] a prisoner's release upon proof of certain ascertainable facts." *Baker*, 128 N.H. at 380, 513 A.2d at 960.

The plaintiff does not argue that the parole board violated either its own rules or the statute. Instead, he contends that the board's requirement that he complete the SOP before becoming eligible for parole violated his right against compelled self-incrimination. Part I, article 15 of the New Hampshire Constitution protects the plaintiff from being "compelled to accuse or furnish evidence against himself." The fifth amendment to the United States Constitution protects him from being "compelled in any criminal case to be a witness against himself." These privileges are comparable in scope. *State v. Cormier*, 127 N.H. 253, 255, 499 A.2d 986, 988 (1985). We first address the plaintiff's claim under the State Constitution, *see State v. Ball*, 124 N.H. at 231, 471 A.2d at 350, citing federal law only as it aids our analysis. *State v. Maya*, 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985). Because the Federal Constitution is not more protective of the plaintiff's right against compelled self-incrimination, we need not address his federal claim in this case. *State v. Drewry*, 139 N.H. 678, 683, 661 A.2d 1181, 1184 (1995); *see Allen v. Illinois*, 478 U.S. 364, 374 (1986); *Reina v. United States*, 364 U.S. 507, 513 (1960).

The plaintiff's privilege against compelled self-incrimination

> not only permits [him] to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.

*Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (quotation omitted). The defendant offers a case from the Montana Supreme Court for the proposition that his "testimony" in this instance has been "compelled." *State v. Imlay*, 813 P.2d 979 (Mont. 1991), *cert. granted*, 503 U.S. 905, *cert. dismissed as improvidently granted*, 113 S. Ct. 444 (1992). In *Imlay*, the Montana Supreme Court concluded that a probation requirement that the defendant participate in a program similar to the SOP, which required him to admit his guilt of the crime underlying his conviction, violated the defendant's right against compelled self-incrimination. *Id.* at 985. The court found a violation because the defendant, even though he had already been found guilty of the offense, still had available several post-conviction remedies that might be jeopardized by such an acknowledgement of responsibility: "These are important rights guaranteed to every

defendant under our criminal justice system, but would be rendered meaningless if the defendant could be compelled to admit guilt as a condition to his *continued freedom.*" *Id.* (emphasis added).

Even if we were to follow *Imlay*, and hold that the plaintiff maintained the privilege against self-incrimination as to the offenses of which he was convicted, *see Wyman v. DeGregory*, 100 N.H. 163, 165, 121 A.2d 805, 807 (1956); *Thomas v. United States*, 368 F.2d 941, 945-46 (5th Cir. 1966), we still would conclude that the plaintiff's right against compelled self-incrimination has not been violated. This is because "[t]here is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." *Greenholtz*, 442 U.S. at 9. The *Imlay* court itself noted this distinction between reimprisonment after a probation violation and a condition of being granted parole, and quoted an earlier Montana case, *State v. Donnelly*, 798 P.2d 89, 96 (Mont. 1990), in which the court had found no constitutional violation:

> The key to this rests on whether the defendant was compelled to testify or was merely required to make a "tactical" decision regarding his parole. Here, defendant's decision to remain silent is a tactical one, not a compelled one. Defense counsel argues that, in reality, defendant's testimony is in fact compelled since it is a prerequisite for parole.
>
> Furthermore, failure to admit to [the crime of which he was convicted] will not result in certain penalty to [the] defendant, it will only result to preserve his current ineligible parole status. . . . [F]ailure to satisfactorily complete the sex offender program . . . will not result in a penalty but will merely result in defendant's continued ineligibility for parole.

*Id.* at 96; *see Imlay*, 813 P.2d at 984-85. The *Imlay* court concluded that in the probation violation context, the defendant who refuses to admit guilt of the crime of which he was convicted clearly is subjected to a penalty for his refusal, that is, prison time. *See Imlay*, 813 P.2d at 984-85.

■ ■ In the instant case, the plaintiff may choose not to participate in the SOP. Accordingly, the compulsion element of a violation of his privilege against compelled self-incrimination is missing: he may choose not to admit his guilt. *See Murphy*, 465 U.S. at 431 (defendant instructed to give truthful answers to probation officer's questions as a condition of probation, but maintained

privilege). The plaintiff's refusal to admit guilt will not cause him to serve additional prison time; he simply may be required to serve the sentence he received originally. *See Baker*, 128 N.H. at 381, 513 A.2d at 961 (prisoner's claim that the parole board's deferral of further consideration of his parole "lengthened [his] sentence . . . so patently wrong that the trial court properly disregarded it").

"A decision to deny parole thus remains qualitatively different from a decision to revoke parole once granted," *id.* at 381, 513 A.2d at 960, and the plaintiff's interest in parole has not risen above a "hope," *id. See Greenholtz*, 442 U.S. at 9. The trial court was correct in denying the plaintiff's petition.

*Affirmed.*

All concurred.