Brooker v. Warden, NHSP          CV-98-466-JD  06/22/99

UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Scott Brooker

        v.                               Civil No. 98-466-JD

Warden, New Hampshire
State Prison


                            O R D E R


     Scott Brooker, proceeding pro se, seeks habeas corpus relief
pursuant to 28 U.S.C.A. § 2254, challenging the constitutionality
of New Hampshire's parole system as it is applied to him.  In
particular, he argues that the requirement that he successfully
complete sexual offender programming, including a
Psychophysiological Detector of Deception ("PDD") test, violates
his Fifth, Eighth, and Fourteenth Amendment rights and the Ex
Post Facto Clause.  The respondent moves for summary judgment,
(document no. 39); the petitioner objects and files several
motions to submit evidence in support of his petition (documents
no. 26 and 29).


                            Background

     In 1980, Brooker was convicted of two counts of aggravated
felonious sexual assault and one count of kidnaping.  He received
three 7½ to 15 year sentences.  He completed his first fifteen-

year sentence in 1993, and is now serving the second and third sentences concurrently.

Brooker participated in sexual offender treatment and programming at the New Hampshire State Hospital and at the prison, and, most recently, he participated in the Enhanced Relapse Prevention Program ("ERPP") at the prison. Irene Lavoie, who is a therapist at the prison, said in her affidavit that Brooker participated in ERPP from September of 1996 through August of 1997. Brooker also began to participate in an "after care" program during the fall of 1997 in which inmates provided support for each other after completing a sexual offender program.

In her evaluation of Brooker dated October 7, 1997, Lavoie reported that although he was a model participant during ERPP treatment sessions, other incidents made her question his honesty in the treatment process. By way of example, Lavoie noted that Brooker had been disciplined just before beginning the ERPP treatment for activities to start a "fantasy photo" business to solicit personal information and photographs of women for an art exhibit. Lavoie explained in her report that honesty in disclosing offenses was essential to the treatment process and that some discrepancies between Brooker's statements and the police reports of his offenses made her question his honesty. In

2

her affidavit, Lavoie mentions that Brooker denied a rape attempt of one victim, which is one of the crimes of his conviction.

Because of her concerns about his honest participation in the ERPP, Lavoie recommended that he undergo the PDD test, which is a kind of polygraph test, to validate his truthfulness. The agreement for ERPP did not require a PDD test. Lavoie recommended that Brooker not be paroled until the test was completed. On October 16, 1997, the parole board denied parole citing the need for reduced custody status, a community sexual offender program, and the lack of a PDD test. Brooker's request for reduced custody status was denied in April of 1998 due in part to a lack of a PDD test.

Brooker agreed to take the PDD test and, because it was not then available at the prison, paid the cost of administering the test himself. The test was administered by George E. Brown, a forensic psychophysiologist, on April 15, 1998. In his report dated April 27, 1998, Brown explained the purpose of the test was "to determine if he has more sexual offense victims then [sic] he has reported." Brown concluded, "After careful review of the subjects [sic] examination coupled with quality control review, it is the express opinion of this specialist that Mr. Brooker has other unreported victims." Brown cautioned that PDD test results were to be considered for treatment purposes but not to be used

3

as the sole basis for determining violations of probation or parole.

Since the PDD results were interpreted not to validate Brooker's honest participation in the ERPP, his custody classification status was not changed. In June of 1998, Brooker's supervisors reported to the parole board that Brooker had "failed" the PDD test. The supervisors recommended that he progress through reduced custody status including a work release program before being considered for parole because he would benefit from a gradual, supervised release program rather than immediate parole. The parole board denied parole in June of 1998 saying, "Board's position declared at hearing of 10/16/97 is unchanged. Will consider for parole when in a halfway house and participating in sexual offender counseling."

Brooker took a second PDD test in September of 1998 that was administered by the prison. The second test focused on one of his New Hampshire convictions. No report of the results of the second test is included in the record. Irene Lavoie said in her affidavit, "The results of the second test PDD also reinforced my concerns that Mr. Brooker was not being honest about his offenses and behavior." Brooker stopped attending the after care program in September of 1998.

On October 22, 1998, the parole board wrote: "Will consider

4

for a parole hearing in November 98, for parole to a halfway house."  In December, Brooker's parole hearing was continued until January of 1999 "so board can discuss treatment report with Irene Lavoie."  The board denied parole on January 14, 1999, stating as its reason that "board concludes that [Brooker] has not been entirely truthful regarding his offenses and record."  They said that a rehearing would be held "when, in the opinion of the treatment team, he is completely honest about his offenses/record."

## Discussion

In support of his request for habeas relief, Brooker asserts a liberty interest in parole and claims that New Hampshire's parole system violates his Fifth, Eighth, and Fourteenth Amendment rights and the Ex Post Facto Clause.  The respondent moves for summary judgment.[1]  Summary judgment is appropriate in habeas proceedings, as in other civil actions, when "the pleadings, depositions, answers to interrogatories, and

---

[1]The respondent contends that Brooker has not exhausted his claims based on the Eighth Amendment and equal protection under the Fourteenth Amendment, and it is not clear whether those claims were raised in Brooker's state habeas actions.  See Order of the N.H. Supreme Ct. No. 98-746, December 1, 1998.  Because of the outcome in this case, however, it is not necessary to resolve whether the claims were exhausted.  See 28 U.S.C.A. § 2254(b)(2).

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] Fed. R. Civ. P. 56(c); see also Fed. R. Civ. P. 81(a)(2).

A.  Due Process Claim

Brooker contends that the respondent has deprived him of liberty without due process by denying him parole based on the negative results of his PDD tests and Irene Lavoie's reports despite the fact that he has participated in sexual offender programming and "has continued to 'jump through the hoops.'" Petition at 5.  A convicted prisoner, however, has no independent constitutional right to parole.  Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979).  A right to parole, subject to protection under the Due Process Clause, exists only if such a right is created by state law.  See Sandin v. Conner, 515 U.S. 472, 483-84 (1995); Board of Pardons v. Allen, 482 U.S. 369, 373-

---

[2]Brooker says that the respondent did not provide him with copies of "the exhibits it tells the court to See."  Affidavit in Opposition to Summary Judgment (doc. no. 41) at 2.  The exhibits referenced by the respondent in the motion for summary judgment and supporting memorandum are the exhibits Brooker appended to his petition.  As those documents are part of the record, having been submitted by Brooker, the respondent was not obligated to provide copies to Brooker for purposes of the summary judgment motion.

81 (1987).  In determining whether state law provides a protectable liberty interest in parole, federal courts are bound by the state's interpretation of applicable state law unless that construction or application violates federal law.  See Hamm v. Latessa, 72 F.3d 947, 954-55 (1st Cir. 1995).[3]

The applicable parole laws now in force in New Hampshire are found in N.H. Revised Statutes Annotated ("RSA") chapter 651-A. The statute provides the terms of release for parole:

> A prisoner may be released on parole upon the expira-
> tion of the minimum term of his sentence, [as adjusted
> by other statutory provisions], provided that there
> shall appear to the adult parole board, after having
> given the notice required in RSA 651-A:11, to be a
> reasonable probability that he will remain at liberty
> without violating the law and will conduct himself as a
> good citizen.

RSA 651-A:6, I (1996).  Under the authority provided by RSA 651-A:4, III (1996), the parole board has adopted rules including the following statement of parole policy:

> Parole shall be considered a privilege, something to be
> earned rather than automatically given, and any release
> prior to the maximum term shall be made only upon
> careful and lawful consideration.  An inmate shall not
> be granted parole unless the board finds a reasonable

---

[3]An inmate also has no constitutional right to a particular custody or security status.  Moody v. Daggett, 429 U.S. 78, 88 n.9 (1979); Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997). Brooker has not argued that state statutes, regulations, or prison policy created a protectable liberty interest in reduced custody or security status.

probability that the inmate will remain at liberty
without violating any law and will conduct himself as a
good citizen.  While that finding is a necessary
condition to the granting of parole, it is not the only
condition.  The board can make that finding and yet
deny parole on some other ground as provided in part
302.

Code of N.H. Rules, Weil's Codes, Par-301.01 (1996).  Part 301.02
provides a nonexclusive list of other parole criteria including
the inmate's criminal record, his "ability and readiness to
assume obligations and undertake responsibility," the inmate's
attitude toward his prior criminal conduct, and evaluations or
recommendations from prison staff and personnel.  Id. at Par-
301.02.  Section 302 lists six mandatory grounds for denying
parole including a determination that continued treatment in the
prison would substantially improve the inmate's ability to
conform to parole criteria or that a reasonable probability
exists that the inmate will not conform to the conditions of
parole or state law.  When Brooker was sentenced in 1980, the
parole provisions were found in different statutory and rule
codifications, but provided nearly identical authority and policy
to the parole board.  See RSA 651:45 (1976) (terms of release on
parole); Rules and Procedures Adopted by the New Hampshire Board
of Parole, Sections I & IV, as Amended Dec. 6, 1976.

The New Hampshire Supreme Court has repeatedly held that the
parole board has broad discretion in its parole decisions and

8

that the board is not mandated to grant parole to an inmate who meets certain conditions. Baker v. Cunningham, 128 N.H. 374, 380-81 (1986); accord Cable v. Warden, 140 N.H. 395, 397 (1995); Knowles v. Warden, 140 N.H. 387, 376 (1995); see also Martineau v. Halgemoe, 117 N.H. 1017, 1018 (1977). Although the New Hampshire court's analyses predate Sandin, viewing the New Hampshire parole scheme in the context of the nature of the right protected would not change the outcome. See Hamm, 72 F.3d at 954 (using Sandin analysis to determine liberty interest in parole); but see Ellis v. District of Columbia, 84 F.3d 1413, 1418 (D.C. Cir. 1996) (Sandin analysis not applicable in parole context).

Under Sandin, instead of relying on whether the state's statutory or regulatory language is mandatory, the court considers the nature of the interest and whether the state law imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Denial of parole leaves an inmate to serve his legally conferred maximum sentence, which is not an atypical or significant hardship in the context of prison life. See, e.g., Wildermuth v. Furlong, 147 F.3d 1234, 1238 n.4 (10th Cir. 1998).

Parole under the New Hampshire system is explicitly a privilege that may be earned by successfully demonstrating the inmate's capacity for parole to the satisfaction of the parole

9

board. While parole offers the possibility of mitigating a valid sentence, the parole system does not protect an inmate from an atypical hardship in the context of ordinary prison life. The possibility of parole is not a right to liberty conferred by New Hampshire law.[4] Since Brooker has not demonstrated a liberty interest in parole conferred by state law, his due process claim based on the denial of parole is not viable. See U.S. Const. amend. XIV; see also Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Olim v. Wakinekona, 461 U.S. 238, 250 (1983).

B. Equal Protection Claim

Although less well-developed than the due process claim, Brooker also asserts that he has been denied equal protection of the laws in the parole process. He does not identify himself as a member of a protected class, but instead points to two other inmates who he believes were granted parole despite having failed a PDD test. He also contends that an accusation by a confidential informant about his conduct in prison has unfairly

---

[4]In contrast to Brooker's view of the system, parole is not based on jumping through specified hoops. In other words, the parole board is not obligated to grant parole when an inmate has participated in sexual offender program treatment without regard to whether he successfully completed the treatment and without consideration of any other criteria for parole eligibility.

influenced decisions against him, and, in that regard, he has been treated differently than other prisoners. Although in some circumstances the parole process might demonstrate sufficiently discriminatory or arbitrary conduct to raise constitutional concerns, Brooker has not provided a factual basis to raise a dispute as to whether constitutionally discriminatory or arbitrary decisions were made in his case. See, e.g., Burkett v. Love, 89 F.3d 135, 139-140 (3d Cir. 1996).

C. Fifth Amendment Claim

Brooker contends that the sexual offender programming and the PDD test in particular impermissibly require him to disclose his prior criminal conduct, both crimes of conviction and other criminal acts in violation of the Fifth Amendment. The Fifth Amendment states that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Fifth Amendment protection extends to any proceeding in which compelled answers could lead to future criminal proceedings. See Allen v. Illinois, 478 U.S. 364, 368 (1986).

Courts have recognized the coercive effect of a requirement that an inmate satisfactorily participate in a sexual offender program, including disclosure of his past criminal conduct, as a prerequisite for parole eligibility. See, e.g., Neal v. Shimoda,

131 F.3d 818, 829 (9th Cir. 1997) (finding liberty interest requiring due process before labeling as sex offenders inmates who were not convicted of sexual offences); Lile v. McKune. 24 F. Supp. 2d 1152, 1157-59 (D. Kan. 1998) (additional sanctions beyond merely serving sentence due to inmate's refusal to disclose criminal conduct in sexual offender treatment constitutes compulsion). A voluntary statement or interview, however, even when given in the hope of improving the inmate's chances for parole, is not compelled and, therefore, is not protected by the Fifth Amendment. See Ohio Adult Parole Auth. v. Woodard, 118 S.Ct. 1244, 1252-53 (1998); accord Wildermuth, 147 F.3d at 1237; Lile, 24 F. Supp. at 1158.

In this case, Brooker voluntarily participated in sexual offender program treatment, including the ERPP, and voluntarily took the two PDD tests. Although he participated in hopes of improving his chances for reduced custody status and parole, he could choose not to participate without increasing the hardship of his incarceration since he was not subject to any additional punishment for refusing to participate. See Knowles, 140 N.H. at 392-93. Offering the possibility of earning a benefit is certainly an incentive to participate, but it is not coercion. In other words, the possibility of parole is a carrot, not a stick. Under these circumstances, Brooker was not compelled to

12

make statements about other criminal acts. Therefore, the respondent's reliance on the PDD and sexual offender treatment as part of the criteria for parole eligibility do not violate Brooker's Fifth Amendment rights against compelled self incrimination.

D. Eighth Amendment Claim

Although Brooker has not clearly defined his Eighth Amendment claims, he seems to assert that the respondent's failure to classify him at a lower custody level and the requirement that he participate in sexual offender programming to be eligible for parole violate the Eighth Amendment. The Eighth Amendment protects against cruel and unusual punishment. Claims that challenge the validity or duration of a sentence are cognizable in support of a habeas petition, while claims that challenge the conditions of legal confinement, which will not result in the petitioner's release, do not support a habeas petition and are more properly considered under 42 U.S.C.A. § 1983. See Preiser v. Rodriquez, 411 U.S. 475, 484-85 (1973); Williams v. Hopkins, 130 F.3d 333, 335 (8th Cir. 1997); Gomez v. United States, 899 F.2d 1124, 1125-26 (11th Cir. 1990).

Based on the record, neither Brooker's custody status nor the sexual offender programs at the prison impose "punishments

13

which are incompatible with the evolving standards of decency that mark the progress of a maturing society." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976). Sexual offender programming at the prison, as was discussed above, is voluntary not mandatory. The purpose of the prison's programming is to provide treatment, not punishment. <u>See Knowles</u>, 140 N.H. at 388. A voluntary treatment program is not punishment within the meaning of the Eighth Amendment. <u>See Neal</u>, 131 F.3d at 833; <u>see also Kansas v. Hendricks</u>, 521 U.S. 346, 360-64 (1997). As Brooker has no right to parole or to a particular custody status, and he has not alleged that the conditions of his current status violate society's standards of decency, he has not made an Eighth Amendment claim based on his custody status.

E. <u>Ex Post Facto Claim</u>

Brooker argues that the requirement that he successfully complete sexual offender programming in order to be eligible for parole violates the Ex Post Facto Clause because, when he was sentenced in 1980, sexual offender programs did not exist and his sentence did not include a requirement that he participate in the programs. The Ex Post Facto Clause prohibits the retroactive application of laws that inflict a greater punishment than was prescribed when the crime was committed. <u>Lynce v. Mathis</u>, 519

14

U.S. 433, 440-41 (1997). Laws have been interpreted broadly in ex post facto analyses to include administrative policy and regulations in some cases. See Hamm, 72 F.3d at 956 n.14. A law inflicts a greater punishment, in the context of parole, if "the new provision constricts the inmate's opportunity to earn early release, and thereby makes more onerous the punishment for crimes committed before its enactment." Weaver v. Graham, 450 U.S. 24, 36 (1981); accord Lynce, 450 U.S. at 445 (retroactive alteration of parole implicates the Ex Post Facto Clause).

To begin an ex post facto analysis, the court must compare the new law with the old. Neither party has addressed the question of whether there is a state law, or a regulation or policy that operates as a law, that requires an inmate who was convicted of a sexual offense to successfully complete sexual offender programing as a prerequisite for parole eligibility. See Hamm, 72 F.3d at 956. An inmate may be referred to treatment by the court or prison staff, or he may request admission. See Knowles, 140 N.H. at 388. Absent information to the contrary, it appears that the parole board's decision to deny parole in Brooker's case until he successfully completes sexual offender programming is based on the board's parole criteria that "Continued treatment, mental or psychological care, or vocational or other training within the institution would substantially

15

improve the inmate's capacity to lead a law-abiding life upon release at a future date."  N.H. Admin. Rules, Par 302.01(c); see also Cable v. Warden, 140 N.H. 395, 397 (1995).

In 1980, when Brooker was convicted, the parole board's rules provided:

> In denying parole to a prisoner, the Board's decision may include, but not to be limited to, the following reasons: . . .
>
> 4.  His continued treatment, mental or psychological care or vocational or other training in the institution will substantially enhance his capacity to lead a law-abiding life when released at a future date."  N.H. Board of Parole Rules at Sec. 4.

Therefore, the regulatory basis for the parole board's decision has not changed.  What has changed is that the prison now offers a sexual offender program that provides a means of treatment and evaluation that were unavailable in 1980.

To violate the Ex Post Facto Clause, the change in the system must present a significant risk of lengthening a prisoner's expected term of imprisonment.  See California Dept. of Corrections v. Morales, 514 U.S. 499, 508-09 (1995).  The addition of sexual offender programming did not necessarily lengthen the time that an inmate must spend in prison.  Instead, its effect depends entirely on the prisoner's experience in the program.  Thus, the effect of the new program is highly individual.  Whether the program will increase the time a

16

particular prisoner spends in prison is only a possibility. See Morales, 514 U.S. 499, 508-09 (1995) (speculative or attenuated possibilities of prohibited consequences from an amended law do not violate Ex Post Facto Clause); accord Hamm, 72 F.3d at 956-59. Cf. Lynce, 591 U.S. at 447 (cancellation of earned overcrowding credits making class of parole-eligible prisoners ineligible violated Ex Post Facto Clause); Weaver, 450 U.S. at 35-36 (reduction of earned gain time restricted prisoners' ability to earn early release in violation of ex post facto prohibition). Sexual offender programming presents much less risk of increasing prison time than the statutory amendments in California that allowed parole boards to defer hearings for prisoners convicted of double murders, which the Supreme Court found did not violate the Ex Post Facto Clause in Morales. Id., 514 U.S. 499.

The parole obstacle for Brooker is that he has not convinced the parole board that he is eligible for release because he has not satisfied the program requirements that he openly and honestly acknowledge his sexual offending history. He has not shown, however, that he would have been eligible for release but for the sexual offender programming. Given the parole board's rules before the addition of programming, the board would not have found Brooker eligible for parole before the program was

17

available if they determined, as they have, that based on staff reports, he needed further treatment. Therefore, the addition of the sexual offender programs to the considerations used for parole does not violate the Ex Post Facto Clause.

## Conclusion

Based on the record presented for summary judgment, no material issue requires factual development and the respondent is entitled to judgment as a matter of law. The petitioner's motions (documents no. 26 and 29) submitting additional evidence are granted to the extent the additional materials were relevant and admissible. The respondent's motion for summary judgment (document no. 39) is granted. The clerk of court is instructed to enter judgment accordingly and to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

June 22, 1999

cc:  Scott Brooker, pro se
     Jennifer B. Gavilondo, Esquire

18