Ainsworth v. NH Dept. of Corrections   CV-99-447-M    05/18/00
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Wayne Ainsworth, et al.,
     Plaintiffs

     v.                                    Civil No. 99-447-M
                                           Opinion No. 2000 DNH 121
Edda Cantor, Acting Commissioner,
New Hampshire Dept. of Corrections,
     Defendant


                          **O R D E R**


     Plaintiffs, a group of 23 inmates at the New Hampshire State

Prison, filed this civil rights action seeking a declaration that

aspects of the prison's sexual offender treatment program violate

their Fifth Amendment right against compelled self-incrimination.

They also seek preliminary and permanent injunctive relief.


     Plaintiffs say the sexual offender treatment program

violates their rights against self-incrimination because they

must fully disclose their history of sexual misconduct, including

uncharged criminal conduct, as a condition of admission.  And,

they claim that they are "compelled" to participate in the sexual

offender program (and, in so doing, provide potentially incriminating evidence against themselves) because, unless they participate: (1) they are subjected to punitive transfers within the prison; and (2) are not granted parole.

On February 3, 2000, the Magistrate Judge issued a Report and Recommendation, recommending that the court grant plaintiffs' request for a preliminary injunction, enjoining defendants from "conditioning admission to the SOP upon admission by plaintiffs to uncharged criminal conduct, unless plaintiffs are immunized from use in any way of those admissions in any subsequent criminal proceedings." Report and Recommendation (document no. 17) at 29. Pending before the court are the parties' objections to various aspects of that Report and Recommendation, as well as defendant's motion to dismiss.

## Background

In order to participate in the prison's sexual offender treatment program, an inmate must, among other things, freely and

2

openly accept responsibility for his past sexual misconduct (both that underlying his conviction(s), as well as any uncharged misconduct). In the professional judgment of those administering the program, such candor is essential to effective treatment. Beyond obtaining effective treatment, however, participation in the program can bring more concrete benefits as well for, generally speaking, the parole board rarely grants parole to a sexual offender if he has not successfully completed that program. So, the chances for parole substantially increase for those sexual offenders who do choose to participate effectively. On the other hand, if an inmate denies his offense conduct, or refuses to candidly disclose and accept responsibility for all past sexual misconduct, he will not be admitted to the sexual offender program, is unlikely to be granted parole, and will probably be required to serve his full sentence. There are, however, exceptions to the general rule – the parole board has, on occasion, paroled sexual offenders who did not successfully complete the program.

**Discussion**

I.  <u>Defendant's Motion to Dismiss</u>.

Plaintiffs argue that the disclosure requirement operates to compel them to provide incriminating evidence against themselves, in violation of the Fifth Amendment's protection.  They say that if they refuse to acknowledge their histories of sexual misconduct, they are refused admission to the program and that, in turn, has substantial adverse consequences.  So, in effect, they are "compelled" to provide self-incriminating statements because failing to do so results in a form of punishment.  First, they say that if they do not participate in the sexual offender program, they are subject to transfer from one cell block to another, less desirable, cell block.  Next, they claim that failure to fully disclose past sexual misconduct precludes admission to or completion of the program, which effectively precludes parole, which means they will be imprisoned for a longer period than otherwise would be the case.  Neither argument, however, has merit.

A.    Eligibility for Parole.

That an inmate will likely not be granted parole until he completes the sexual offender program does not, under the circumstances of this case, implicate constitutional concerns. Both this court and the New Hampshire Supreme Court have addressed this issue on several occasions.  The reasoning underlying the holdings in those opinions need not be recounted again.  See Wellington v. Brodeur, No. 96-189-M (D.N.H. Dec. 30, 1996); Knowles v. Cunningham, No. 96-228-JD (D.N.H. Jan. 24, 1997); Wellington v. Commissioner, 140 N.H. 399 (1995); Knowles v. Warden, N.H. State Prison, 140 N.H. 387 (1995).

It is enough to note that prisoners have no constitutionally protected liberty interest in parole.  Nor does the prison violate an inmate's Fifth Amendment rights by conditioning admission to its sexual offender program upon the inmate's disclosure and acceptance of responsibility for all past sexual misconduct (both charged and uncharged).  Plaintiffs are not "compelled" to relinquish their Fifth Amendment rights by the

5

program's requirements because participation in the sexual offender program is entirely voluntary. Thus, an inmate may freely, and without coercion, determine whether it is in his best interest to participate in that program (and openly discuss his history of sexual misconduct), or decline to participate, hoping that he will be among the relatively few inmates granted parole notwithstanding their failure to complete the program. It may be a difficult choice for plaintiffs – some may rationally choose to avoid the risks of full disclosure at the cost of a realistic chance for parole; others may accept those risks to obtain valuable help and enhance their chances for parole. But, whether the State's policy choices in this regard (presumably the State would want to encourage every sexual offender to undergo treatment before release) are wise or productive is not at issue here. Those policy choices belong to the State, and the State's requirements do not violate any federal constitutional guarantees.

At this juncture, it is probably worth clarifying some confusion in the record by noting that plaintiffs do <u>not</u> claim that they are being denied parole <u>hearings</u> as a result of their failure to complete the sexual offender program. As defendant readily concedes, under New Hampshire law <u>all</u> inmates are entitled to a parole hearing after they have completed the minimum term of their sentence, even if they are sexual offenders who have not completed the sexual offender program.

What plaintiffs <u>do</u> claim is that satisfactory completion of the sexual offender program "is a de facto requirement of parole," saying that it is "common knowledge that a sex offender will not be paroled until he has completed the program." Amended Petition for Declaratory and Injunctive Relief (document no. 13) at 7. Plainly, however, evidence introduced at the preliminary injunction hearing flatly refutes plaintiffs' claim. Some inmates (albeit relatively few) are paroled notwithstanding their failure to complete the program, though that fact is not critical because no inmate enjoys a right to parole.

7

Returning to defendant's motion to dismiss, however, it is clear that the State may legitimately consider an inmate's failure to complete the sexual offender program as a factor counseling against granting that inmate parole.  See Brooker v. Warden, No. 98-466-JD, slip op. at 13 (D.N.H. June 22, 1999). See also Doe v. Sauer, 186 F.3d 903, 906 (8th Cir. 1999) ("the denial of parole is permissible if it is based on the prisoner's refusal to participate in his rehabilitation and not based on his invocation of his privilege.").  That the State considers an inmate to be a more attractive candidate for parole if he completes the sexual offender program, a point that hardly seems arguable in light of the State's interest in protecting the public, does not amount to unconstitutional "compulsion" to participate in the treatment program.  As this court (DiClerico, J.) held in Brooker:

> A voluntary statement or interview . . . even when given in the hope of improving the inmate's chances for parole, is not compelled and, therefore, is not protected by the Fifth Amendment. . . . Offering the possibility of earning a benefit is certainly an incentive to participate, but it is not coercion.  In

8

other words, the possibility of parole is a carrot, not a stick.

Brooker v. Warden, No. 98-466-JD, slip op. at 12 (D.N.H. June 22, 1999) (citations omitted). See generally Ohio Adult Parole Authority v. Woodard, 523 U.S. 272 (1998) (holding that inmate faced with decision to accept death sentence or voluntarily testify at clemency hearing, at which he would likely be asked to provide self-incriminatory information, was not "compelled," within the meaning of the Fifth Amendment, to incriminate himself). Sentenced prisoners are not deprived of any constitutional right under these circumstances if they are required, or choose, to serve the full sentence lawfully imposed.

Little more need be said. This court (and others) have previously addressed and rejected plaintiffs' claim that conditioning participation in the sexual offender treatment program on therapeutic cooperation, i.e. acceptance of responsibility for all prior sexual misconduct, amounts to a

9

Fifth Amendment violation.  As to that claim, plaintiffs'

petition fails to state a viable cause of action.


        B.     Transfers for Non-Participating Inmates.

        Plaintiffs' remaining argument is that they are being

unconstitutionally compelled to provide self-incriminating

statements in order to avoid being transferred from the prison's

South Unit to H-Building.  Specifically, they say:


> Most sex offenders (and most plaintiffs) are classified
> as medium custody inmates and are housed in a unit
> within the state prison called "South."  South's inmate
> population consists of about 90% sex offenders.  Those
> who "refuse" the SOP (by denying guilt, pursuing
> appeals or collateral attacks on their convictions,
> and/or refusing to disclose other victims or offenses)
> are "punished" by being transferred from South unit to
> Hancock Building, or "H-Building."  Those who fail the
> SOP once admitted (e.g., for refusing to disclose other
> victims, minimizing guilt, etc.) are also transferred
> to H-Building.  Although H-Building also contains
> medium security inmates, it contains the more
> troublesome medium custody inmates and the conditions
> of H-Building and the consequences of being moved to H-
> Building are sufficiently more restrictive than South,
> so as to give rise to the compulsion to invoke the
> Fifth Amendment privileges.


Amended petition at 10-11.

While thoughtfully presented, plaintiffs' argument lacks force. Just as inmates have no constitutionally protected interest in being confined in a particular prison, they have no constitutionally protected interest in being confined in a particular section or cell block of a prison. See Meachum v. Fano, 427 US 215, 224 (1976) ("The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons."). But cf. Vitek v. Jones, 445 U.S. 480, 493 (1980) (holding that the transfer of an inmate from a prison to a mental hospital did implicate a liberty interest because placement in the mental hospital was "not within the range of conditions of confinement to which a prison sentence subjects an individual," and because it brought about "consequences . . . qualitatively different from the punishment characteristically suffered by a person convicted of crime.").

Here, while plaintiffs claim that life in H-Building is less pleasant than that in South, they do not assert that it is "qualitatively different from the punishment characteristically suffered by a person convicted of a crime."  That prison officials might choose to reward those inmates who elect to participate in the sexual offender program by assigning them to South also does not amount to state-sanctioned "compulsion" to participate in program.  As Judge DiClerico noted, "[o]ffering the possibility of earning a benefit is certainly an incentive to participate, but it is not coercion."  Brooker, slip op. at 12.

To be sure, some courts have concluded that prison authorities violate an inmate's Fifth Amendment rights when they punish him or withhold a benefit because he invokes his privilege against self-incrimination in a context in which he might expose himself to criminal liability.  See McMorrow v. Little, 109 F.3d 432, 435 (8th Cir. 1997) (collecting cases).  Here, however, plaintiffs are exposed to transfer from South not because they have invoked Fifth Amendment rights, but because they have chosen

12

not to enroll (or meaningfully participate) in the sexual offender program.  The distinction is an important one because prison authorities may deny benefits to inmates who refuse to participate in prison programming or who refuse to divulge information essential to the proper administration of that program.  See, e.g., Asherman v. Meachum, 957 F.2d 978, 982-83 (2d Cir. 1992) (en banc) (concluding that prison authorities were entitled to revoke an inmate's supervised home release after he refused to discuss the details of his criminal conduct, notwithstanding the fact that providing such details entailed the risk of self-incrimination); McMorrow, 109 F.3d at 436 ("prison officials may constitutionally deny benefits to a prisoner who, by invoking his privilege against self-incrimination, refuses to make statements necessary for his rehabilitation, as long as their denial is based on the prisoner's refusal to participate in his rehabilitation program and not his invocation of his privilege.").

As noted above, plaintiffs do not claim that they are being transferred as a form of punishment for having invoked their Fifth Amendment rights. Instead, they say that they are subject to transfer for failure to enroll in (or satisfactorily complete) the sexual offender program. Transfers within the prison on that basis do not infringe plaintiffs' constitutionally protected rights. Nor do such transfers constitute any sort of "compulsion" to waive their Fifth Amendment rights.

II. <u>The Report and Recommendation</u>.

At this juncture, the court pauses to address the Magistrate Judge's Report and Recommendation because, if one of the premises underlying that report is correct, it obviously undermines the court's disposition of defendant's motion to dismiss, as well as its decision not to accept the Magistrate Judge's recommendation that a preliminary injunction be issued.

Although not advanced by plaintiffs in their petition, the Magistrate Judge considered whether prison authorities could

14

lawfully refuse to even <u>consider</u> an inmate for parole if he had not completed the sexual offender program. Defendant has readily acknowledged that, under New Hampshire law, inmates do enjoy a statutory right to a parole hearing following completion of the minimum term of their sentence (it is parole itself, not a parole hearing, to which they have no right). Consequently, as the Magistrate Judge noted, if prison authorities refused to grant a statutorily qualified inmate a parole <u>hearing</u> until he first completed the sexual offender program, that inmate might have a legitimate basis for complaint.

However, the evidence adduced at the hearing suggests that the prison does, in fact, consider all eligible inmates for parole (and occasionally actually grants parole to sexual offenders who have not completed the treatment program). No evidence was presented establishing that <u>any</u> plaintiff was eligible for, but was denied, a parole hearing simply because he had not completed the sexual offender program. John Eckert, Executive Assistant to the Parole Board, testified that

15

successful completion of the sexual offender program is just a factor, among others, the Board considers when deciding whether to grant parole, albeit a significant factor. He also testified that "a handful [of inmates] a year, two or three perhaps" are granted parole notwithstanding the fact that they have not completed the program. (That number represents somewhere between 3% and 6% of all sexual offenders paroled annually.) Lance Messinger, Director of the Sexual Offender Program, provided similar testimony. Finally, none of the plaintiffs who testified at that hearing said that he had been denied a parole <u>hearing</u> simply based upon his refusal to participate in the sexual offender program. In fact, plaintiffs' amended petition acknowledges that at least one plaintiff was granted a parole hearing notwithstanding his failure to participate in the program. <u>See</u> First Amended Petition, at para. 4(q).

In any event, plaintiffs' petition does not assert that they have unlawfully been denied parole <u>hearings</u>. <u>See generally</u> First Amended Petition for Declaratory and Injunctive Relief (claiming

16

only that satisfactory completion of the sexual offender program is a de facto condition of parole, not a precondition to receiving a parole hearing).  A claim that plaintiffs have been denied all consideration for parole describes a different case that must be presented in a new complaint; of course, under the strictures of Fed. R. Civ. P. 11.  At this point, however, it would be inappropriate for the court to rule on a claim that was neither presented in plaintiffs' petition nor addressed in the parties' subsequent filings.

III. Fifth Amendment Concerns and Immunizing Inmates.

Finally, the court briefly addresses a concern identified in the Report and Recommendation.  The Magistrate Judge alluded to a problem arising from the requirement that participants in the sexual offender program disclose and accept responsibility for all past sexual misconduct, including both charged and uncharged conduct.  Because inmates are not granted any sort of immunity from prosecution (and because evidence produced at the hearing suggests that they might well be prosecuted for such conduct),

17

the program's requirements create a strong disincentive for some inmates to participate. That disincentive is unfortunate (and perhaps unintended) since statistics maintained by the State suggest that participants in the sexual offender program are far less likely to re-offend than are those offenders who receive no treatment. The State's data suggest that the public may be better served if, prior to his release, a sexual offender participates in (and successfully completes) the treatment program.

Nevertheless, whether to grant immunity (and thereby eliminate an impediment to some inmates' meaningful participation) is a policy matter committed to the State's discretion. This court cannot prescribe the criteria for admission to the sexual offender treatment program, or extend immunity to its participants.

18

## Conclusion

Defendant's motion to dismiss (document no. 8) is granted. Plaintiffs' claims that the completion of the sexual offender program is a "de facto" condition of parole and that the risk of transfer within the prison amount to unconstitutional compulsions to waive their Fifth Amendment right against self-incrimination fail to state viable causes of action. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 18, 2000

cc:  Michael J. Sheehan, Esq.
     Daniel J. Mullen, Esq.

19