NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2015-203


PETITION OF WARDEN, NEW HAMPSHIRE STATE PRISON
(State v. Roberts)

Argued: May 7, 2015
Opinion Issued: July 10, 2015


Joseph A. Foster, attorney general (Elizabeth A. Lahey, assistant attorney general, and Richard W. Head, senior assistant attorney general, on the brief, and Mr. Head orally), for the State.


Catherine J. Flinchbaugh, public defender, of Concord, on the brief and orally, for the respondent.


LYNN, J. The issue before us in this Rule 11 petition for certiorari review[1], see Sup. Ct. R. 11, filed by the State, is whether the Adult Parole Board (APB) exceeded its authority or otherwise violated the rights of the respondent, Jerry Roberts, when it paroled him to a consecutive sentence —

_____

[1] Although the State filed its appeal as a request for certiorari review, we note that the trial court's decision is a final order, which would arguably permit review as an appeal pursuant to Supreme Court Rule 7. In light of the facts that neither party raises this issue, the appeal was timely filed under either Rule 7 or Rule 11, and the basis of our decision is the trial court's error of law, we conclude that the specific mechanism by which the case came before us is of no particular consequence, and we therefore do not consider the issue further.

the maximum of which had been suspended — but then refused to release him from prison upon his completion of the minimum term of that sentence. We hold that the APB's actions were not improper and we therefore reverse the order of the Superior Court (Anderson, J.), which granted the respondent's petition for habeas corpus relief.

I

The pertinent facts are not in dispute. The respondent was convicted of aggravated felonious sexual assault (AFSA) and sentenced to four-to-ten years at the New Hampshire State Prison (prison). The respondent also received a sentence of one-to-two years for related conduct; that sentence was suspended. The respondent began serving his four-to-ten year sentence in 2008. On April 1, 2013, the respondent was classified as a C-1 inmate and resided in a halfway house at the prison. While at the halfway house, the respondent was arrested and consequently returned to general population status in the prison. Following his arrest, the State moved to impose his one-to-two year suspended sentence. The Superior Court (O'Neill, J.) partially granted the State's motion: it imposed the one-year minimum sentence, which was to be served consecutively to the four-to-ten year sentence, but suspended the two-year maximum of the sentence.

On August 15, 2013, the respondent appeared before the APB, as he had served the minimum four years of his AFSA sentence. See RSA 651-A:6, I (2007) (subsequently amended). At that time, he was "approved for parole to consecutive," and his parole hearing paperwork indicated that he must have "review prior to release consideration" with the Administrative Review Committee (ARC). The respondent thus began serving his one-year consecutive sentence. On October 2, 2013, the ARC evaluated the respondent and recommended that he return to the prison's sexual offender treatment program.

Upon completion of his one-year consecutive sentence in August 2014, the respondent was not released from the prison into the community. Instead, he continued serving his original four-to-ten year sentence. The State asserted that the respondent was not released because he had not yet completed the required sexual offender treatment program. The respondent filed a petition for a writ of habeas corpus, claiming that he was entitled to immediate release from the prison because he had been paroled from his four-to-ten year sentence to his one-year consecutive sentence, and he had completed the one-year sentence. The State moved to dismiss the petition, arguing that the respondent was not entitled to immediate release because the APB had not granted him "parole to release" from prison, but instead had merely granted him "parole to a consecutive sentence," and thus the APB retained the authority to determine whether he should be released upon completion of the consecutive sentence. Following a hearing, the court denied the State's motion

2

to dismiss, granted the respondent's petition, and ordered that the respondent be released from prison. Thereafter, the State sought certiorari review of the trial court's order, which we stayed pending our decision.[2]

## II

"Certiorari is a remedy that is not granted as a matter of right, but rather at the discretion of the court." Petition of State of N.H., 166 N.H. 659, 662 (2014); see Sup. Ct. R. 11. "Certiorari is available to review whether the trial court acted illegally with respect to jurisdiction, authority or observance of the law, or unsustainably exercised its discretion or acted arbitrarily, unreasonably, or capriciously." Petition of State of N.H., 166 N.H. at 662-63. The issue on appeal is whether the trial court properly granted the respondent's petition for habeas corpus relief, a determination that turns upon whether the APB's refusal to release him into the community upon completion of his consecutive sentence constituted "a present deprivation of a protected liberty interest." See Brennan v. Cunningham, 126 N.H. 600, 603-04 (1985) (quotation omitted).

## III

We begin our analysis by briefly reviewing the relevant statutory framework governing sentencing and parole, specifically considering the authority of the APB. The legislature has articulated the following as its goals in establishing the parole system:

> It is the intent of the legislature that the state parole system provide a means of supervising and rehabilitating offenders without continued incarceration and a means by which prisoners can be aided in the transition from prison to society. It is also the intent of the legislature that the policies, procedures and actions of

---

[2] By letter dated June 15, 2015, respondent's counsel advised the court that the respondent had been released from prison on parole. She asserts that, as a result, "the appeal is now moot as to him." In light of this letter, we directed the State to file a response setting forth its position as to whether the appeal is moot. In its response, the State contends that the appeal is not moot because, in light of the trial court's order that the respondent had been released on traditional parole by virtue of the APB's August 2013 order, there is an open issue as to the validity of conditions imposed by the APB in connection with respondent's subsequent release. The State also asserts that the issues raised in this appeal are of pressing public interest to insure the proper functioning of the parole system, and satisfy the exception to mootness for cases that are "capable of repetition yet evading review." State v. Carter, 167 N.H. 161, 164-65 (2014). On the latter point, the State cites a case from the Hillsborough County Superior Court-North, which presents a scenario similar to that involved herein, and raises the question of whether a prisoner who has been paroled to a consecutive sentence that is thereafter suspended must be immediately released into the community. For the reasons articulated by the State, we conclude that this case is not moot.

3

the adult parole board and the department of corrections relative
to the administration of this system emphasize the need to protect
the public from criminal acts by parolees.

RSA 651-A:1 (2007); see also Knowles v. Warden, N.H. State Prison, 140 N.H. 387, 390 (1995).  The statute defines "parole" as "a conditional release from the state prison which allows a prisoner to serve the remainder of his term outside the prison, contingent upon compliance with the terms and conditions of parole as established by the parole board."  RSA 651-A:2, II (2007).  The APB is "responsible for paroling prisoners from the state prison."  RSA 651-A:4, I (Supp. 2014).  To fulfill this responsibility, "the legislature has granted broad authority to the parole board to enact rules regarding the conduct of parole hearings, the criteria used to evaluate prisoners who seek parole, conditions for parolee conduct, and the procedures for parole revocation."  Knowles, 140 N.H. at 390; see RSA 651-A:4, III (2007).

There is no right to parole in New Hampshire.  See Baker v. Cunningham, 128 N.H. 374, 380-81 (1986) ("Although any State legislature is free to provide that parole is a matter of right rather than a subject of discretion, the General Court of this State has not done so" and, "[i]n the absence of some provision grounded in State law mandating a prisoner's release upon proof of certain ascertainable facts, there is no right to parole." (citation omitted)); see also N.H. Admin. Rules, Par 301.02 ("Parole shall be considered a privilege, something to be earned rather than automatically given . . . .").  Rather, the grant of parole rests squarely within the discretion of the APB, and "[w]e have held that the parole board's broad discretion to deny parole is not limited by RSA chapter 651-A, or by its administrative rules."  Knowles, 140 N.H. at 390.  "As long as the decision [to grant parole] rests upon . . . essentially discretionary determinations, a prisoner's interest in parole fails to rise above the level of a hope."  State v. Gibbons, 135 N.H. 320, 322 (1992) (quotation omitted); see Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 11 (1979) ("That the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained.").

The starting point for analysis of the specific issue before us requires us to consider the nature of the APB's act of paroling a prisoner from the sentence he is currently serving to another sentence ordered to be served consecutively to the first.  As stated, the APB is tasked with paroling prisoners from the state prison into the community.  RSA 651-A:4, I.  When a prisoner is serving one sentence, the transition from prison to society is a straightforward one: he or she is eligible for traditional parole into the community upon completion of the minimum of the sentence.  RSA 651-A:6, I.  When a prisoner is serving multiple sentences, one or more of which is consecutive to another, however, this transition to society is no longer a one-step process: instead, the prisoner must first transition from one sentence to another before finally transitioning into the community.  Faced with this situation, the APB has developed an

4

intermediate step in the traditional parole process that allows prisoners to parole into a consecutive sentence upon completion of the minimum of a prior sentence. The effect of this practice is to restructure the order of sentences by allowing a prisoner to serve time on a consecutive sentence while continuing to serve time on the initial sentence, and thus potentially earn conditional release into the community more quickly.

Although no provision of RSA chapter 651-A or the administrative rules governing parole specifically authorizes the APB to grant parole to a consecutive sentence, neither do the statutes or the rules prohibit it from doing so; and, given the APB's longstanding history of exercising this power, we agree with the State that the legitimacy of this practice is now beyond question. See N.H. Retirement System v. Sununu, 126 N.H. 104, 109 (1985) ("[T]he long-standing practical and plausible interpretation [of a statute] applied by the agency responsible for its implementation, without any interference by the legislature, is evidence that the administrative construction conforms to the legislative intent." (quotation omitted)); see also Appeal of Town of Seabrook, 163 N.H. 635, 644 (2012).

The respondent argues that the APB, upon deciding to parole him to his consecutive and final sentence, could not then "continue to hold [him] on the prior AFSA sentence after he ha[d] completed serving the consecutive one-year sentence." We disagree. As part of its broad discretion to administer the parole process, the APB has the authority to deny parole altogether in appropriate circumstances. It thus follows that, within this discretion, the APB has the lesser authority to utilize the intermediate mechanism of parole to a consecutive sentence without thereby committing to release the prisoner into the community upon completion of that sentence.[3] We are likewise not persuaded by the respondent's additional argument that such a result impermissibly alters the ordering of the sentences as imposed by the court. Paroling a prisoner to a consecutive sentence necessarily — and permissibly — has the effect of changing the order of sentences, i.e., in consolidating the unexpired portion of both an initial sentence and a consecutive sentence; and no meaningful alteration results from a prisoner continuing to serve the unexpired portion of the first-imposed sentence after completing the consecutive sentence.

The respondent also contends that the APB's act of paroling him to his consecutive sentence entitled him to a revocation hearing before he could be "returned" to serving his four-to-ten year sentence. Again, we disagree. This

---

[3] We note that, in cases where the maximum of the consecutive sentence has not been suspended, as happened here, the issue of whether the APB can parole to a consecutive sentence, while retaining the authority to decide later whether to release the prisoner on that sentence, may have lesser practical significance because, regardless of whether such authority exists, the APB would have discretion to decide whether the prisoner should be granted parole to release on the consecutive sentence upon completion of the minimum term of that sentence.

argument is premised upon two incorrect assumptions: first, that a prior sentence is extinguished when a prisoner is paroled to a consecutive sentence; and second, that the act of paroling the respondent to his consecutive sentence gave him a liberty interest in conditional release upon completion of that sentence. Because the respondent's four-to-ten year sentence was not completed, and was not put on hold, at the time he was paroled to his consecutive sentence, he could not have been "returned" to his prior sentence, as he never "left it" in the first place.

More importantly, the parole-to-consecutive practice does not, as the respondent urges, invariably constitute a determination by the APB that the prisoner shall be conditionally released into the community upon completion of the consecutive sentence. Rather, "parole to consecutive" means what it says: parole to a consecutive sentence, not traditional parole to conditional release into the community. That distinction is critical because a prisoner's desire to obtain parole release — unlike his interest in remaining in the community once released — does not trigger constitutional protection against the deprivation of a liberty interest.

> A decision to deny parole thus remains qualitatively different from a decision to revoke parole once granted. While the decision to revoke is characteristically circumscribed by the burden on the government to prove facts amounting to a violation of parole conditions, the decision to deny is discretionary. Therefore, though the State may not revoke without procedural due process, the decision to deny is not so circumscribed.

Baker, 128 N.H. at 381 (citations omitted); see Greenholtz, 441 U.S. at 9-10 (discussing the "crucial distinction" between parole release and parole revocation, and quoting Judge Henry Friendly's observation that "there is a human difference between losing what one has and not getting what one wants" (quotation omitted)). Because the APB's practice of paroling to a consecutive sentence does not contemplate conditional release into the community, but rather is an intermediate step that occurs prior to parole release consideration, the APB's act of paroling the respondent to his consecutive sentence did not trigger a liberty interest such that the APB was required to hold a parole revocation hearing before requiring him to continue serving time on his AFSA sentence. See Baker, 128 N.H. at 380-81 (no right to parole release in New Hampshire).

Our conclusion that the APB has the authority to parole to a consecutive sentence, while retaining discretion to determine later whether the prisoner should be released into the community, also furthers public policy. By not requiring it to commit to eventual release at the time it determines whether a prisoner can start serving a consecutive sentence, the APB may be encouraged to grant parole to consecutive sentences in close cases where it would not do so

6

if that decision carried with it the requirement that the prisoner be released upon completion of that sentence. However, were we to accept the respondent's argument that the APB loses the ability to later reevaluate a prisoner's readiness for release because the parole-to-consecutive practice creates a liberty interest in a <u>future</u> conditional release upon completion of the consecutive sentence — an event that may not come to fruition for five, ten, or fifteen years, or longer — the APB might well be reticent to utilize this practice. The inevitable result would be a decreased likelihood of paroling a prisoner to a consecutive sentence upon completion of the minimum term of his or her initial sentence, thereby jeopardizing the practice's presumptive benefits to prisoners. In short, by allowing prisoners to serve a consecutive sentence concurrently with a prior sentence, and earn conditional release more quickly, the APB effectuates the legislature's goal that, in administering the parole process, it both supervise and rehabilitate prisoners without unnecessarily prolonging their incarceration, a beneficial result that we will not undo. <u>See</u> RSA 651-A:1.

IV

In the alternative, the respondent argues that, even assuming that the practice of paroling to a consecutive sentence without automatic release at the conclusion thereof is permissible, "the habeas court properly found that [the respondent] had been 'paroled in the traditional sense'" rather than paroled to a consecutive sentence. We are not persuaded.

In its order, the trial court concluded that, because "the APB ha[d] failed to clearly state that [the respondent] was being administratively paroled,"[4] he "was paroled in the traditional sense to his one-year imposed consecutive sentence," and therefore was entitled to be released when that sentence ended. In reaching this conclusion, the trial court relied upon the APB Form, which states, under the heading "Parole Board Notes," that the respondent was "approved for parole to consecutive, must have ARC review prior to release consideration."

The respondent, noting that "principles of due process require that orders relating to the imposition of criminal sentences be expressed in clear terms," asserts that, because there is no "meaningful distinction" between a parolee "receiving an order regarding the grant or denial of parole and a criminal defendant receiving a sentence from a judge," the same due process requirement of clarity of terms should also govern the APB's actions. <u>See</u> <u>State v. Fletcher</u>, 158 N.H. 207, 209-10 (2009) ("Due process requires a sentencing court to clearly communicate to the defendant the exact nature of the sentence

---

[4] By "administrative parole," the trial court apparently meant to describe a kind of parole, such as parole to a consecutive sentence, in which the prisoner is not entitled to automatic release at some point in the future. We are advised by the State that the APB does not utilize the term "administrative parole" to describe the practice of parole to a consecutive sentence.

as well as the extent to which the court retains discretion to modify it or impose it at a later date." (quotation omitted)).  Even if we were to assume without deciding that this analogy is appropriate, our reading of the APB's form does not lead us to conclude that it provides support for granting the respondent the relief he seeks.

We interpret written documents <u>de</u> <u>novo</u>.  <u>See</u> <u>Edwards v. RAL Auto. Group</u>, 156 N.H. 700, 705 (2008) ("The interpretation of final judgments, like the interpretation of other written documents, is a question of law, which we review <u>de</u> <u>novo</u>.").  Accordingly, the respondent's suggestion, that we must accept the trial court's finding regarding the APB form because it represents a factual determination supported by the record, is misplaced.  Based upon its plain language, we conclude that the APB Form was sufficiently clear, in that it notified the respondent that he was being paroled <u>to a consecutive sentence</u>, and that such action did not create a reasonable expectation that the respondent was automatically entitled to conditional release upon the completion of his consecutive sentence.  It states that the respondent would need ARC review prior to release <u>consideration</u>, thus indicating that, at the time he was paroled to the consecutive sentence, the APB had not yet considered him for release into the community.  Because we conclude that the form was sufficiently clear to notify the respondent that he was only being paroled to his consecutive sentence, we reject his argument to the contrary.

V

For the foregoing reasons, we conclude that the trial court erred as a matter of law in granting the respondent habeas corpus relief.  We therefore reverse its judgment.

<u>Reversed</u>.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.