**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2014-0720, <u>Gregg Blackstock v. Executive Assistant, Adult Parole Board & a.</u>, the court on June 9, 2016, issued the following order:**

Having considered the briefs and oral arguments of the parties and the record submitted on appeal, the court concludes that a formal written opinion is unnecessary in the case. The petitioner, Gregg Blackstock, appeals an order of the Superior Court (<u>Wageling</u>, J.) dismissing his writ of mandamus against the respondents, the executive assistant to the Adult Parole Board (APB) and the New Hampshire Department of Corrections (DOC). We affirm.

I.    Background

The following facts are derived from the trial court's order or appear in the record. In 2001, the petitioner was sentenced to four sentences of five to ten years of incarceration on four counts of aggravated felonious sexual assault. Three sentences were to run consecutively and one sentence was to run concurrently.

The petitioner began serving his initial sentence on January 12, 2001, and received a 95-day credit based upon his pretrial confinement. On August 18, 2005, the APB held the petitioner's first parole hearing, after which it denied parole. On January 5, 2006, the APB held a second hearing, after which it granted the petitioner parole from his initial sentence to his first consecutive sentence.

Nearly five years later, on November 4, 2010, the APB conducted a third hearing, after which the petitioner was denied parole. On October 10, 2011, the APB conducted a fourth hearing, after which the petitioner was granted parole to his final consecutive sentence. The petitioner remains incarcerated, and is currently serving his final sentence. The maximum term of this sentence is set to expire on October 9, 2021.

In May 2014, the petitioner filed a petition for writ of mandamus against the APB, asserting that it impermissibly paroled him to consecutive sentences and improperly conducted his parole hearings in advance of his minimum parole eligibility date. He contended that, as a result, his minimum term of incarceration was increased by at least one year. The petitioner requested, among other things, that the court: (1) order the APB to "cease and desist" all parole hearings until his aggregate minimum parole eligibility date, which he

asserted was governed by RSA 651:20, I(a)(2) (Supp. 2015); and (2) order the DOC to re-calculate his minimum parole eligibility date based upon an aggregate minimum term of 15 years.

The APB moved to dismiss, arguing that: (1) "the APB properly considered [the petitioner] for administrative parole at the end of his first two consecutive sentences, and properly calculated the minimum parole date for his final sentence"; and (2) the petitioner erroneously relied upon RSA 651:20, I(a)(2), which applies to suspended sentences, rather than RSA chapter 651-A (2007 & Supp. 2015), which governs parole. The petitioner objected, arguing that: (1) RSA 651-A:6, II (2007) (repealed 2008), which was the applicable statute in effect at the time of his offenses, convictions, and sentencing, governed the calculation of "the minimum parole eligibility date for an inmate serving multiple consecutive sentences"; (2) pursuant to RSA 651-A:6, II, he had to serve only the total of the minimum terms of his two longest sentences, ten years, before becoming eligible for parole from prison; (3) application of the current version of RSA 651-A:6, see RSA 651-A:6 (Supp. 2015), would violate his federal constitutional guarantee against ex post facto laws; and (4) the APB lacked the authority to parole him to consecutive sentences. The petitioner requested, among other things, that the court: (1) order "the DOC to calculate [his] sentence pursuant to RSA 651-A:6, [II as it existed during the date of the charged offense, making [him] time eligible for parole (to society) after he had served the minimum portions of the two [longest] sentences imposed"; and (2) order "the APB to conduct a parole hearing (to society) . . . forthwith for [him] using only the mandated criteria pursuant to State statutes and promulgated rules."

The trial court held a hearing on the matter on July 11, 2014. After the hearing, the petitioner filed a motion to amend, seeking to add the DOC as a respondent, which the court granted. Also, after the hearing, the parties filed supplemental briefs. In August 2014, the court issued an order granting the respondents' request for dismissal. The court ruled that: (1) the now repealed RSA 651-A:6, II set forth the calculation of "the duration of parole once an inmate was released, not the length of a minimum sentence required in order for an inmate to be considered for parole"; (2) even assuming the petitioner's interpretation of RSA 651-A:6, II is correct, application of the current version of RSA 651-A:6 "does not constitute an ex post facto law because it does not increase [the petitioner's] punishment"; (3) "the APB did not act outside its jurisdiction in considering [the petitioner] for parole after each of his first two minimum sentences"; and (4) the APB did not lack jurisdiction to consider the petitioner for parole even though he would be paroled to a consecutive sentence, rather than released from prison. The petitioner filed a motion for reconsideration, which the court denied. This appeal followed.

## II.    Standard of Review

"In reviewing the trial court's grant of a motion to dismiss, we consider whether the allegations in the [petitioner's] pleadings are reasonably susceptible of a construction that would permit recovery." England v. Brianas, 166 N.H. 369, 371 (2014). "We assume that the [petitioner's] factual allegations are true and construe all reasonable inferences in the light most favorable to him." Id. "We need not, however, assume the truth of statements that are merely conclusions of law." Id. "We then engage in a threshold inquiry, testing the facts alleged in the pleadings against the applicable law." Id. (quotation omitted). "We will uphold the trial court's grant of a motion to dismiss if the facts pleaded do not constitute a basis for legal relief." Id. (quotation omitted).

## III.    Interpretation of RSA 651-A:6, II

The petitioner first argues that the trial court erred in ruling that RSA 651-A:6, II set forth the calculation of the duration of parole upon release from prison, not the calculation of the minimum parole eligibility date for an inmate serving multiple sentences. Specifically, he contends that: (1) legislative history supports the conclusion that RSA 651-A:6, II concerned the minimum parole eligibility date of an inmate serving multiple sentences; (2) inclusion of RSA 651:3, III (1974) (repealed 1975) in RSA 651-A:6, II did not affect the applicability of RSA 651-A:6, II; (3) the rule of lenity should apply in favor of his interpretation of RSA 651-A:6, II; and (4) federal district court case law supports the conclusion that RSA 651-A:6, II addressed parole eligibility. The respondents assert that: (1) the trial court properly concluded that, based upon the plain language of RSA 651-A:6 (2007) (amended 2008, 2010, 2011, 2013, 2014), RSA 651-A:6, II set forth the calculation of the duration of parole upon release from prison, not the calculation of the minimum parole eligibility date for an inmate serving multiple sentences; (2) legislative history supports the trial court's conclusion that RSA 651-A:6, II concerned the duration of parole, not parole eligibility; (3) the longstanding practice of the APB of paroling an inmate serving multiple sentences to society only after he or she has served all of his or her minimum terms supports the conclusion that RSA 651-A:6, II did not address parole eligibility; and (4) the petitioner's interpretation of RSA 651-A:6, II produces an absurd result.

"Because resolution of this issue requires the interpretation of a statute, our review is de novo." State v. Gilley, 168 N.H. 188, 189 (2015). "In matters of statutory interpretation, we are the final arbiters of the intent of the legislature as expressed in the words of the statute considered as a whole." Id. "We construe provisions of the Criminal Code according to the fair import of their terms and to promote justice." Id. "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Id. "Further, we interpret legislative intent from the

3

statute as written and will not consider what the legislature might have said, or add language that it did not see fit to include." Id. at 189-90. "Finally, we interpret a statute in the context of the overall statutory scheme and not in isolation." Id. at 190.

At the time of the petitioner's offenses, convictions, and sentencing, RSA 651-A:6, entitled "Terms of Release," provided, in relevant part:

> I. A prisoner <u>may be released on parole upon the expiration of the minimum term of his sentence</u>, minus any credits received pursuant to RSA 651-A:23, plus the disciplinary period added to such minimum under RSA 651:2, II-e, any part of which is not reduced for good conduct as provided in RSA 651-A:22, provided that there shall appear to the adult parole board, after having given the notice required in RSA 651-A:11, to be a reasonable probability that he will remain at liberty without violating the law and will conduct himself as a good citizen. <u>Any prisoner so released shall be given a permit by the board to be at liberty from prison during the unexpired portion of the maximum term of his sentence</u>.

> II. When a person is subject to <u>multiple concurrent or consecutive sentences of imprisonment</u>, as provided in RSA 651:3, III, <u>the provisions of this section</u> shall be <u>computed from the total of the 2 longest sentences</u>, subject to the provisions of RSA 651-A:14.

RSA 651-A:6, I (2007) (amended 2010, 2011, 2013, 2014), II (emphases added).

As an initial matter, we note that RSA 651:3, III, which is referenced in RSA 651-A:6, II, was repealed in 1975. See Laws 1975, 158:2. Prior to its repeal, the provision "provided for all sentences to run concurrently except those of persons convicted of a felony either during imprisonment or an escape from imprisonment." Duquette v. Warden, N.H. State Prison, 154 N.H. 737, 741 (2007). The parties agree that inclusion in RSA 651-A:6, II of this repealed provision does not affect the application of RSA 651-A:6, II in the instant case. Cf. State v. Whittey, 149 N.H. 463, 467-69 (2003) (concluding, after reviewing applicable legislative history, that reference to rape statute within first degree murder statute subsequent to repeal of rape statute was an oversight that did not eliminate rape element of first degree murder statute). Thus, we assume, without deciding, that when the legislature repealed RSA 651:3, III, it did not nullify RSA 651-A:6, II.

We begin our statutory analysis by interpreting the phrase "the provisions of this section" in RSA 651-A:6, II. RSA 651-A:6, II. We interpret the plain meaning of the phrase "this section" to refer to the section in RSA

4

chapter 651-A in which RSA 651-A:6, II was found.  See Black's Law Dictionary 1557 (10th ed. 2014) (defining "section," in relevant part, as a "distinct part or division of a writing, esp. a legal instrument").  Additionally, we construe the plain meaning of the term "provisions" to refer to the clauses within that section.  See id. at 1420 (defining "provision," as relevant here, as a "clause in a statute").  Prior to its repeal, RSA 651-A:6, II was part of RSA 651-A:6, which governed terms of release.  See RSA 651-A:6; Bussiere v. Cunningham, Warden, 132 N.H. 747, 752 (1990) (referring to RSA 651-A:6 as "the parole release statute").  We, therefore, interpret the phrase "the provisions of this section" to mean the clauses of RSA 651-A:6 relative to terms of release.  RSA 651-A:6, II.

We must next determine what the legislature meant when it stated that the provisions of RSA 651-A:6 "shall be computed from the total of the 2 longest sentences."  RSA 651-A:6, II (emphasis added).  The petitioner contends that RSA 651-A:6, II set forth the calculation of the minimum parole eligibility date for an inmate serving multiple sentences.  The respondents counter that paragraph II did not address parole eligibility, but rather the duration of parole upon release from prison.  The Appellate Defender Program, acting as amicus curiae, maintains that paragraph II addressed both the minimum parole eligibility date and the duration of parole for an inmate serving multiple sentences.

We have defined the term "sentence," in the context of suspended sentences, to mean "the punishment prescribed by a court in relation to a conviction on a single offense."  State v. Horner, 153 N.H. 306, 310 (2006).  Although we find no reason to diverge from this definition in the context of parole, the definition fails to clarify the meaning of the phrase "2 longest sentences" as used in RSA 651-A:6, II.  The phrase could refer to the two longest maximum terms.  Under this reading, as the respondents contend, RSA 651-A:6, II set forth the calculation of the duration of parole upon release from prison, because duration of parole was based upon an inmate's maximum term.  See RSA 651-A:6, I ("Any prisoner so released shall be given a permit by the board to be at liberty from prison during the unexpired portion of the maximum term of his sentence." (emphasis added)).  However, because sentences for felonies have both minimum and maximum terms, see RSA 651:2, II(d) (Supp. 2015), the phrase could also refer to the minimum and maximum terms of an inmate's two longest sentences.  Under this reading, as the amicus curiae suggests, RSA 651-A:6, II set forth the calculation of both the minimum parole eligibility date and the duration of parole upon release from prison.

"Where more than one reasonable interpretation of the statutory language exists, we review legislative history to aid our analysis."  Duquette, 154 N.H. at 740.  Upon review of the relevant legislative history, we conclude that RSA 651-A:6, II set forth the calculation of the duration of parole upon

release from prison, not the calculation of the minimum parole eligibility date for an inmate serving multiple sentences.

Prior to 1991, RSA 651-A:6, II provided: "When a person is subject to multiple concurrent or consecutive sentences of imprisonment, as provided in RSA 651:3, III, the provisions of this section shall be computed from the longest of said sentences." RSA 651-A:6, II (1986) (amended 1991; repealed 2008) (emphasis added). In 1991, the legislature introduced House Bill (HB) 771, which sought to amend RSA 651-A:6, II to read: "When a person is subject to multiple concurrent or consecutive sentences of imprisonment, as provided in RSA 651:3, III, the provisions of this section shall be computed from the . . . total of the maximums of said sentences." House Bill 771 (1991). In testimony before the Senate Judiciary Committee, in support of HB 771, Arthur Brennan, then-Governor Judd Gregg's legal counsel, stated that:

> [The APB] said that currently a prisoner who has had multiple convictions, which might add up to fifteen years of three year convictions, only serves parole for the longest of those convictions. So that person, although they had a fifteen year period might only have a three year parole after serving all of the minimum sentences. The parole board's rationale . . . is that the longer the person is on supervision, if it is someone who has been convicted of multiple crimes, the more likely that person is to get used to the idea of going straight. It is as simple as that.

Senate Comm. on Judiciary, Hearing on HB 771 (April 17, 1991) (testimony of Arthur Brennan) (emphases added). Ultimately, the legislature did not adopt the language originally proposed in HB 771. See Laws 1991, 342:3. Rather, it adopted the language in the version of RSA 651-A:6, II at issue in this case. See id. Nevertheless, we find the legislative history of the 1991 amendment instructive as to the legislature's intent.

"We construe statutes to address the evil or mischief that the legislature intended to correct or remedy." State v. Lathrop, 164 N.H. 468, 470 (2012). As Brennan's testimony evinces, the purpose of amending RSA 651-A:6, II in 1991 was to increase the duration of parole for an inmate who was sentenced to multiple sentences. Thus, construing paragraph II as setting forth the calculation of the duration of parole is consistent with the legislature's apparent effort to lengthen parole supervision.

Moreover, "the construction of a statute by those charged with its administration is entitled to substantial deference." N.H. Retirement System v. Sununu, 126 N.H. 104, 108 (1985). "[W]hen the meaning of a statute is in doubt, the long-standing practical and plausible interpretation applied by the agency responsible for its implementation, without any interference by the

legislature, is evidence that the administrative construction conforms to the legislative intent." Id. at 109 (quotation omitted).

Brennan's testimony indicates that, as early as 1991, the APB did not interpret RSA 651-A:6, II as addressing the minimum parole eligibility date for an inmate serving multiple sentences. As he explained in his testimony, "[the APB] said that currently a prisoner who has had multiple convictions . . . only serves parole for the longest of those convictions . . . after serving all of the minimum sentences." Senate Comm. on Judiciary, Hearing on HB 771 (April 17, 1991) (testimony of Arthur Brennan) (emphases added). This explanation suggests that the APB interpreted the language of RSA 651-A:6, II — which at the time provided that "the provisions of this section shall be computed from the longest of said sentences," RSA 651-A:6, II (1986) (amended 1991; repealed 2008) (emphasis added) — to refer only to the duration of parole upon release, not parole eligibility. If the APB had interpreted paragraph II as setting forth the calculation of the minimum parole eligibility date, it would not have required an inmate to serve "all of the minimum sentences" before becoming eligible for parole from prison. Senate Comm. on Judiciary, Hearing on HB 771 (April 17, 1991) (testimony of Arthur Brennan) (emphasis added). Had the legislature disagreed with the APB's interpretation, it presumably would have corrected the error when it amended RSA 651-A:6, II in 1991. See Woodman v. Cunningham, 126 N.H. 481, 484 (1985) (concluding that, if warden had been releasing prisoners much sooner than the legislature intended under former RSA chapter 607, "we have no doubt that the legislature would have acted swiftly to correct the warden's misinterpretation"). Additionally, at no time between the 1991 amendment and the repeal of RSA 651-A:6, II in 2008 did the legislature intervene to correct the APB's interpretation and the apparent resulting APB practice of paroling an inmate serving multiple sentences only after such an inmate served all of his minimum terms.

Finally, it is clear from the language of HB 771, as originally introduced, that it could not have referred to parole eligibility. HB 771 sought to amend RSA 651-A:6, II to read: "the provisions of this section shall be computed from the . . . total of the maximums of said sentences." House Bill 771. Such a calculation, if applied to parole eligibility, would have required an inmate to serve, in prison, the entirety of all of his or her maximum terms; thus, no inmate serving multiple sentences would ever become eligible for parole. Although the initial language of HB 771 was not ultimately adopted, it confirms that the legislature's focus in amending RSA 651-A:6, II was on the duration of parole, not parole eligibility. Accordingly, we conclude that when the legislature amended RSA 651-A:6, II in 1991, it intended the paragraph to set forth the calculation of the duration of parole once an inmate serving concurrent or consecutive sentences is released from prison, not the calculation of such an inmate's minimum parole eligibility date.

The petitioner argues that legislative history extending back to 1909 supports his contention that RSA 651-A:6, II set forth the calculation of his minimum parole eligibility date. However, legislative intent is not stagnant. Rather, an individual amendment to a statute may have "its own history and, potentially, its own intent, which may or may not be the same as the intent behind earlier amendments." Doe v. State of N.H., 167 N.H. 382, 399 (2015). We conclude, therefore, that the legislative history that directly relates to the 1991 amendment, as reviewed above, is more indicative of the legislature's intent. Moreover, to the extent that the petitioner relies upon subsequent legislative history to support his contention, we have reviewed it and are not persuaded that it supports his position.

The petitioner also maintains that the rule of lenity should apply in favor of his interpretation of RSA 651-A:6, II. The "rule of lenity serves as a guide for interpreting criminal statutes where the legislature failed to articulate its intent unambiguously." State v. Dansereau, 157 N.H. 596, 602 (2008) (quotation omitted). "This rule of statutory construction generally holds that ambiguity in a criminal statute should be resolved against an interpretation which would increase the penalties or punishments imposed on a defendant." Id. (quotation omitted). The rule, however, "is not to be applied lightly: it applies only if, after seizing everything from which aid can be derived, the court can make no more than a guess as to what the legislature intended." State v. Ravell, 155 N.H. 280, 287 (2007) (Duggan, J., dissenting) (quotation and brackets omitted). Having concluded that the pertinent legislative history establishes that the legislature intended RSA 651-A:6, II to set forth the calculation of the duration of parole upon release from prison, not the calculation of the minimum parole eligibility date for an inmate serving multiple sentences, we decline to apply the rule of lenity.

We are similarly not persuaded by the petitioner's contention that cases from the United States District Court for the District of New Hampshire construing RSA 651-A:6, II should influence our interpretation of the paragraph. We are the final arbiters in matters of statutory interpretation of State law. See Gilley, 168 N.H. at 189.

IV.    Parole to a Consecutive Sentence

The petitioner next argues that the trial court erred in failing to address his contention that the APB impermissibly paroled him to consecutive sentences. He also contends that the APB does not have the authority to parole an inmate to a consecutive sentence because: (1) parole means release from prison; (2) the administrative rules governing parole do not authorize parole to a consecutive sentence and, thus, the practice violates the Administrative Procedures Act, see RSA ch. 541-A (2007 & Supp. 2015); (3) parole to a consecutive sentence violates due process; and (4) the APB's

longstanding practice of paroling an inmate serving consecutive sentences from one sentence to another is irrelevant because it is contrary to established law.

Whether the trial court failed to address this issue is immaterial because we have decided that, as a matter of law, the APB has the authority to parole an inmate to a consecutive sentence. See Petition of Warden (State v. Roberts), 168 N.H. 9, 15-17 (2015). In Petition of Warden, we stated:

> Although no provision of RSA chapter 651-A or the administrative rules governing parole specifically authorizes the APB to grant parole to a consecutive sentence, neither do the statutes or the rules prohibit it from doing so; and, given the APB's longstanding history of exercising this power, we agree with the State that the legitimacy of this practice is now beyond question.

Id. at 15. Thus, we conclude that the APB permissibly paroled the petitioner to consecutive sentences.

The petitioner also argues that the effect of paroling him to consecutive sentences was to impermissibly lengthen his aggregate minimum and maximum terms of incarceration. The petitioner misconceives the function of paroling to consecutive sentences. The practice allows an inmate "to serve time on a consecutive sentence while continuing to serve time on the initial sentence, and thus potentially earn conditional release into the community more quickly." Id. It consolidates "the unexpired portion of both an initial sentence and a consecutive sentence." Id. at 16. Thus, the practice of paroling an inmate to a consecutive sentence benefits an inmate and, in fact, benefitted the petitioner here. Accordingly, we reject this claim of error.

V.    Consecutive Sentences

The petitioner also argues that the sentencing court did not have the authority to sentence him to consecutive sentences. He asserts that: (1) the repeal of RSA 651:3, III did not revive the court's common law authority to impose consecutive sentences; (2) the legislative history concerning the repeal of RSA 651:3, III is devoid of any reference to a common law authority to impose consecutive sentences; (3) if the legislature intended to permit consecutive sentences it would have done so expressly; (4) even if the legislature has authorized the imposition of a consecutive sentence for certain crimes, it has not authorized the imposition of multiple consecutive sentences generally; and (5) imposition of consecutive sentences in this case violated the due process requirement of "fair warning," the due process prohibition against vague statutes, the doctrine of separation of powers, and double jeopardy. The respondents contend that the petitioner's arguments are not preserved, but even if they are, they are contrary to our case law. We assume, without

9

deciding, that the petitioner has preserved these arguments for our review, but we agree with the respondents that they are unavailing.

In Duquette, we concluded that the repeal of RSA 651:3, III revived the court's common law authority to impose consecutive sentences and that the court's imposition of consecutive sentences did not violate the notice requirements of the Due Process Clauses of the State and Federal Constitutions or the doctrine of separation of powers. Duquette, 154 N.H. at 744-47. Accordingly, we conclude that the sentencing court here had common law authority to sentence the petitioner to consecutive sentences and, in doing so, violated neither the due process concerns the petitioner describes nor the doctrine of separation of powers. To the extent that the petitioner is asking us to overrule Duquette or arguing that Duquette was wrongly decided, he has not briefed the stare decisis factors. See State v. Smith, 166 N.H. 40, 44 (2014) (setting forth stare decisis factors). Having failed to brief those factors, the petitioner has not persuaded us that Duquette must be overruled or was wrongly decided. See id. at 45.

With regard to the petitioner's assertion that the imposition of consecutive sentences violated his right to be protected against double jeopardy, he has not sufficiently developed this argument for our review. As we have repeatedly stated, "judicial review is not warranted for complaints regarding adverse rulings without developed legal argument, and neither passing reference to constitutional claims nor off-hand invocations of constitutional rights without support by legal argument or authority warrants extended consideration." State v. Durgin, 165 N.H. 725, 731 (2013) (quotation and brackets omitted).

## VI.    Findings and Rulings Pursuant to RSA 491:15

The petitioner further contends that the trial court erred in failing to set forth its findings and rulings in its order on the respondents' request for dismissal as he requested in his motion for a ruling pursuant to RSA 491:15 (2010). We assume, without deciding, that RSA 491:15 applies in this case, but we nonetheless disagree with the petitioner that the trial court erred.

RSA 491:15 provides: "The court . . . shall, if either party requests it, give [its] decision in writing, stating the facts found and [its] rulings of law, which shall be filed and recorded."

> In interpreting RSA 491:15, we have held that although a superior court justice sitting without a jury is generally under no obligation to make findings and rulings in support of a decree unless a party asks for them, when either party does request them, RSA 491:15 requires a statement of facts and legal rulings in jury-waived and non-jury cases.

10

Birch Broad. v. Capitol Broad. Corp., 161 N.H. 192, 200-01 (2010).  "The trial judge in such a case need not respond to every request filed by a party, but the court is obligated to make findings of the basic or essential facts that are sufficient to support the ultimate decision."  Id. at 201.  "This may be done in the narrative form, and the essential rulings of law may be likewise explained."  Id.  "The object is to allow an opportunity for adequate review in this court by providing us with the actual basis for the trial court's decision, in terms of facts found and law applied."  Id.

Here, in its order dismissing the petitioner's writ, the trial court provided the procedural history, relevant facts, standard of review, arguments, relevant law, and its analysis and rulings.  Likewise, the court's order on the petitioner's motion for reconsideration set forth the basis for its denial.  Upon review of both narrative orders, we conclude that the trial court did not fail to provide an adequate basis for appellate review and, therefore, the orders are sufficient to satisfy the requirements of RSA 491:15.

VII.    Evidentiary Hearing

Finally, the petitioner argues that the trial court erred in not providing him an evidentiary hearing to further develop his arguments.  We review the superior court's decision not to hold a hearing for an unsustainable exercise of discretion.  See Provencher v. Buzzell-Plourde Assoc., 142 N.H. 848, 851 (1998) (noting that we review trial court's "decision not to hold a hearing for an abuse of discretion"); see also State v. Lambert, 147 N.H. 295, 296 (2001) (explaining that we refer to abuse of discretion standard as the unsustainable exercise of discretion standard).

Superior Court Civil Rule 13 provides, in pertinent part:

Unless a party requests oral argument or an evidentiary hearing on any motion filed by the party, or on any objection thereto by another party, setting forth by memorandum, brief statement or written offer of proof the reasons why the oral argument or evidentiary hearing will further assist the court in determining the pending issue(s), no oral argument or evidentiary hearing will be scheduled and the court may act on the motion on the basis of the pleadings and record before it.

Super. Ct. Civ. R. 13(b).  The rule requires a party who requests an evidentiary hearing to set forth the reasons why a hearing will further assist the court in determining whether to grant a particular motion.  See Provencher, 142 N.H. at 852 (analyzing former Superior Court Rule 58, which contained nearly identical language to Superior Court Civil Rule 13(b)).  As we explained in addressing former Superior Court Rule 58, "the superior court has discretion to deny a

11

requested oral argument or evidentiary hearing if the proffered reasons for holding such a hearing are insufficient." Id. (quotation and ellipsis omitted).

Here, the petitioner did not meet the requirements of Superior Court Civil Rule 13(b). The petitioner requested an evidentiary hearing to present witnesses, but failed to set forth any reasons as to why the hearing would assist the court in addressing the motion to dismiss. He failed to submit any memorandum, brief statement, or offer of proof to demonstrate what facts or additional information he would present at the hearing if he was given the opportunity. Accordingly, we conclude that the trial court did not unsustainably exercise its discretion when it did not conduct an evidentiary hearing in this matter.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,**
**Clerk**